No. 90-302

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

THE STATE OF MONTANA,

        Plaintiff and Respondent,

  -v-

RICHARD DUKE JUNGERS,

        Defendant and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas Honzel, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

        Randi Hood, Public Defender, Helena, Montana

      For Respondent:

        Marc Racicot, Attorney General, Helena, Montana
        Jennifer Anders, Asst. Atty. General, Helena,
        Montana
        Mike McGrath, County Attorney, Helena, Montana
        Leo J. Gallagher, Deputy County Atty., Helena,
        Montana

Submitted on Briefs: November 1, 1990

Decided: December 11, 1990

Filed:

_____
     /Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Richard Duke Jungers appeals from a jury verdict finding him guilty of felony theft. The District Court of the First Judicial District, Lewis and Clark County sentenced Jungers to ten years for the felony theft and an additional twenty years with twelve years suspended as a persistent felony offender. Jungers was designated dangerous for purposes of parole. We affirm.

The issues presented for review are:

1.   Whether there is sufficient evidence to support Jungers' conviction for felony theft;

2.   Whether Jungers was afforded effective assistance of counsel.

In the weeks preceding Thanksgiving of 1989, Richard Duke Jungers stayed at an apartment rented by Debbie and Ron Newbreast, which was located in Helena, Montana. His stay at the apartment was intermittent because at times he stayed with his girlfriend, or was out of town. However, when he did stay at the apartment he slept on a couch which was in the front room. The Newbreasts occupied the bedroom, which apparently was the only other room in the apartment.

During this same period of time a number of burglaries occurred in the Helena area. On Thanksgiving day Virginia Pruett observed a man running across her neighbor's back yard carrying a long object wrapped in a rug or blanket. The man ran to a blue and white jeep which was waiting in an alley. The man threw the wrapped object into the back, climbed into the passenger side of

2

the vehicle which then drove off. The man Ms. Pruett saw running across the yard had dark tousled hair and was not Richard Jungers. She could not identify the driver of the vehicle.

Gwen Smith, the owner of the house was out of town for the Thanksgiving holiday. Upon returning home, she found out that her house had been ransacked. She prepared a list of missing personal property which included several pieces of jewelry. She estimated the total value of her missing property at $4,300.00.

Shortly after the reported burglary, police found a Jeep Cherokee matching Ms. Pruett's description parked in an apartment complex across the street from the Helena Police Department. The police took a photograph of the vehicle and showed it to Ms. Pruett, who stated that it was similar to the vehicle she had seen in the alley Thanksgiving day. Upon further investigation, the police discovered that the vehicle belonged to Richard Jungers, who as stated earlier, had been staying with Debbie and Ronald Newbreast at their home in the apartment complex.

On December 1, 1989, Helena police, pursuant to a search warrant entered and searched the Newbreast residence. An arrest warrant was also issued for Richard Jungers and while the officer searched the home, Jungers was arrested. Recovered during the search were several items taken from area homes and offices during recent burglaries. These items included a .22 rifle which belonged to Henry Smith and a bronze statue and a notary seal taken from the Morrison-Meloy Law Office during a burglary which occurred shortly after the Thanksgiving holiday. Also found were several articles

3

of jewelry taken from the Gwen Smith residence.

Jungers was charged with four counts of burglary in violation of § 45-6-204, MCA, and felony theft (common scheme) as defined in §§ 45-6-301 and 45-2-101(7). After Jungers entered his plea of not guilty, the State moved to dismiss the four counts of burglary. The District Court granted this motion and ordered trial to proceed on the charges of felony theft.

Following trial, a jury found Jungers guilty of felony theft as defined by § 45-6-301(1)(c), MCA. The District Court sentenced Jungers as heretofore stated. This appeal followed.

I

Jungers argues that there is insufficient evidence to support his conviction for felony theft. As stated earlier, he was convicted of felony theft because the jury found he received stolen property. This offense is defined in § 45-6-301(3), MCA, which states in pertinent part:

> (3) A person commits the offense of theft when he purposely or knowingly obtains control over stolen property knowing the property to have been stolen by another and:
> (a) has the purpose of depriving the owner of the property;
> (b) purposely or knowingly uses, conceals, or abandons the property in such manner as to deprive the owner of the property; or
> (c) uses, conceals, or abandons the property knowing such use, concealment, or abandonment probably will deprive the owner of the property.

Section 45-6-301(6), MCA, provides that the line of demarcation between felony and misdemeanor theft as to the value of the property stolen is $300.00. Taking these two sections together, it is apparent that in order to support Jungers'

4

conviction the evidence must support the conclusion that:

1. Jungers had control over
2. stolen property
3. whose value exceeded $300.00,
4. with the intent to deprive its owner of such property.

During trial, four items seized during the search of the Newbreast home were entered into evidence. The value of these items, as estimated and testified to by their owners was:

| .22 rifle | $225.00 |
| items of jewelry | $5-$10.00 |
| notary seal | $27.00 |
| bronze statue | $50.00 |

The total value of this property approximated $307-$312.00. This evidence as a whole is sufficient to meet the value requirement of felony theft.

However, Jungers strongly argues that the evidence does not support the conclusion that he purposely or knowingly had control over the stolen property. The .22 rifle, in particular, was found in a closet in the Newbreasts' bedroom. According to testimony of Debbie and Ronald Newbreast the rifle was sold to them by another friend, Freddy Gaither. Jungers maintains that there is no evidence he had access to the closet or the rifle and therefore his control over it cannot be established. Since the State cannot prove he had control of the rifle, his conviction for felony theft is unsupported because the only items proven to be in his control were worth only, at the most, $87.00, which is less than the $300.00 required for a felony conviction.

We disagree with Jungers' argument. We begin by noting that the testimony of Ronald Newbreast is far from convincing. It is

5

riddled with inconsistencies and suspect explanations. Following his arrest Newbreast told police that the .22 rifle was brought into the apartment by Richard Jungers. By the time he was called to testify, however, Newbreast changed his story to incriminate Freddy Gaither, who apparently had fallen from Newbreast's favor because he suspected him of "ratting them out." Newbreast attempted to account for this inconsistency through various explanations including his insistence that he was high at the time of the police interview or, in the alternative, that he lied to get out of jail.

We further note that testimony established, contrary to Jungers' argument, that Jungers had full access to the Newbreast apartment. Testimony established that Jungers and the Newbreasts were very generous towards one another and shared all of their belongings. This generosity towards Jungers apparently included permission to enter the Newbreasts' room and access to their personal belongings.

Given this testimony, we hold that the evidence meets the requirement of control. The standard of review employed by this Court when reviewing jury verdicts in criminal matters is necessarily very limited. This standard dictates that:

> [A] conviction may not be overturned when the evidence presented, viewed in the light most favorable to the prosecution, would permit a rationale [sic] trier of fact to find the essential elements necessary to establish the offense. State v. Holman (1990), 241 Mont. 238, 241, 786 P.2d 667, 669.

The above evidence would permit a jury to find such essential elements.

6

Next Jungers argues that he was denied his constitutional right to effective assistance of counsel. In making this argument Jungers maintains that through his failure to rebut the value of the stolen property seized by police, his attorney failed to adequately represent him. As stated earlier, only four items seized at trial were appraised by their owners. The value of these items totaled between $307-$312.00. Jungers argues that his counsel should have attacked the values placed on these items in an effort to establish a total value less than $300.00, which would have led to a conviction for the lesser crime of misdemeanor theft.

In asserting his claim of ineffective assistance of counsel, Jungers must establish two elements. First he must prove that his lawyer's performance fell below the range of competence reasonably demanded of attorneys by the Sixth Amendment to the United States Constitution. Second, he must demonstrate that the deficiency was so prejudicial that he was denied a fair trial. State v. Senn (1990), 47 St.Rep. 1389, 795 P.2d 973.

After careful review of the record, it is apparent that Jungers' counsel performed adequately and competently. It is obvious that he decided, as a matter of tactic, to confront Jungers' guilt head on in an effort to establish complete innocence. Perhaps he utilized this tactic in an effort to prevent Jungers, who was on parole, from being sent back to prison. At any rate, we refuse here to second guess counsel's tactical decisions. Accordingly, we hold that Richard Duke Jungers was not denied his

constitutional right to effective assistance of counse. The jury's
verdict is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices