No. 02-132

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 83

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

TONY R. BYERS,

        Defendant and Appellant.

APPEAL FROM:     District Court of the Fourth Judicial District,
In and for the County of Missoula, Cause No. DC-00-456,
The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Margaret L. Borg, Lynn Fagan, Public Defender Office, Missoula, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; Pamela P. Collins,
Assistant Attorney General, Helena, Montana

            Fred Van Valkenburg, Missoula County Attorney; Karen S. Townsend,
Deputy County Attorney, Missoula, Montana

Submitted on Briefs: January 9, 2003

Decided: April 17, 2003

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     The Appellant, Tony R. Byers ("Byers"), was charged with conspiracy to commit criminal production or manufacture of dangerous drugs, a felony, in violation of §§ 45-4-102 and 45-9-110, MCA; criminal production or manufacture of dangerous drugs, a felony, in violation of §§ 45-4-102 and 45-9-110, MCA; criminal possession of dangerous drugs, a felony, in violation of §§ 45-4-102 and 45-9-130, MCA; and criminal possession of drug paraphernalia, a misdemeanor, in violation of § 45-10-103, MCA.  After the State presented its case at trial, Byers moved for a directed verdict on the basis that there was insufficient corroborative evidence to support the accomplice testimony, as required by § 46-16-213, MCA.  The District Court denied the motion and the jury returned a verdict of guilty on all counts.  Byers appeals from the District Court's denial of his motion for a directed verdict. We affirm.

¶2     We address the following issues on appeal:

¶3     1.  Did the District Court err when it found that there was sufficient evidence to corroborate the accomplice evidence as to Count I?

¶4     2.  Did the District Court err when it found that there was sufficient evidence to corroborate the accomplice evidence as to Count II?

BACKGROUND

¶5     Byers was charged by Information with several counts related to the possession and manufacture of methamphetamine.  He appeals his conviction as to Counts I and II.  Because Counts I and II are based on facts almost entirely separate from one another, we describe the

2

facts in detail below.

## STANDARD OF REVIEW

¶6      We review the denial of a motion for directed verdict in the same manner that we review the sufficiency of evidence to support a conviction.  *See State v. Bower* (1992), 254 Mont. 1, 6, 833 P.2d 1106, 1109.  We examine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *State v. Mergenthaler* (1994), 263 Mont. 198, 203, 868 P.2d 560, 562.  The decision to direct a verdict at the close of the State's case lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion.  *See State v. Moore* (1994), 268 Mont. 20, 64, 885 P.2d 457, 484, *overruled on other grounds by State v. Gollehon* (1995), 274 Mont. 116, 121, 906 P.2d 697, 701.

## DISCUSSION

### ISSUE ONE

¶7      Did the District Court err when it found that there was sufficient evidence to corroborate the accomplice evidence as to Count I?

¶8      Narcotics detective Sandra Ann Bjorklund ("Officer Bjorklund") discovered a portable methamphetamine lab while searching an apartment occupied by Jonathon Toth ("Toth") and Mary Hein ("Hein").  Items seized during the search include a black duffel bag containing the portable methamphetamine lab, a marijuana pipe, a crack pipe, which can be used to smoke methamphetamine, a Chap Stick container which had been hollowed out and

3

contained methamphetamine residue, a snort tube, and two recipes for manufacturing methamphetamine using ephedrine.

¶9     Toth told Officer Bjorklund that a man named Tony helped him manufacture the methamphetamine, and gave her a description of Tony and Tony's car. Tony is the defendant, Tony Byers. Hein testified at trial that Byers showed Toth and Hein how to manufacture the methamphetamine and Toth wrote down the recipe. Hein also testified that Byers sometimes stayed at her apartment, that some of the equipment in the apartment was Byers', that Byers would take some of the methamphetamine that was made in the apartment, and that the methamphetamine lab belonged to Toth and Byers.

¶10    Toth and Hein were both charged as a result of the methamphetamine lab found in their apartment. Toth accepted a plea agreement in which he was sentenced for accountability for criminal production or manufacture of dangerous drugs and criminal possession of dangerous drugs. Hein's case was still pending at the time of Byers' trial, however she admitted she was involved in the manufacture of methamphetamine and she was given use immunity for her testimony in Byers' trial. Toth did not testify at Byers' trial.

¶11    Count I of the Information charged Byers with conspiracy to commit criminal production or manufacture of dangerous drugs, a felony, in violation of §§ 45-4-102 and 45-9-110, MCA. It was alleged that on or about October 1 through 22, 2000, Byers, with the purpose that the offense of criminal production or manufacture of dangerous drugs be committed, agreed with Toth and/or Hein to commit that offense and performed an act in furtherance of that agreement by providing the recipe and some of the materials for

4

producing methamphetamine at their apartment, and also cooked the methamphetamine.

¶12    In a criminal proceeding, testimony of a person who is legally accountable is governed by § 46-16-213, MCA, which states:

> A person may not be found guilty of an offense on the testimony of one responsible or legally accountable for the same offense . . . unless the testimony is corroborated by other evidence that in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense.

¶13    We have previously addressed the guidelines for testing the sufficiency of corroborating evidence.   In *State v. Kemp* (1979), 182 Mont. 383, 597 P.2d 96, we concluded:

> To be sufficient, corroborating evidence must show more than that a crime was in fact committed or the circumstances of its commission. It must raise more than a suspicion of the defendant's involvement in, or opportunity to commit, the crime charged. But corroborative evidence need not be sufficient, by itself, to support a defendant's conviction or even to make out a *prima facie* case against him.   Corroborating evidence may be circumstantial and can come from the defendant or his witnesses.

*Kemp,* 182 Mont. at 387, 597 P.2d at 99 (citations omitted).  In *State v. Kaczmarek* (1990), 243 Mont. 456, 460, 795 P.2d 439, 442, we further determined that "corroborating evidence is not insufficient merely because it is circumstantial, disputed, or possibly consistent with innocent conduct; it is the jury's duty to resolve such factual questions."

¶14    Since Toth and Hein were accomplices in the crimes with which Byers was charged in Count I, corroborating evidence must be held to the standards in § 46-16-213, MCA. Evidence about Byers' methamphetamine lab in the Toth/Hein apartment was also given by another accomplice, Daricek.  Daricek testified that Byers told him Byers was staying at

Toth's house and that Toth had gotten too high, called the police, and turned himself in for having a methamphetamine lab at his house. Byers told Daricek that the police had searched Toth's house and that Byers was hiding out because it was Byers' methamphetamine lab at Toth's house.

¶15     Byers' argues that Daricek's testimony is insufficient because Daricek himself is an accomplice for Count II of the charges against Byers. We disagree. We addressed a similar issue in *State v. Paulson* (1991), 250 Mont. 32, 817 P.2d 1137. In *Paulson*, the defendant was convicted of criminal possession of dangerous drugs with the intent to sell. Two admitted drug dealers testified at Paulson's trial that they had received shipments of drugs from Paulson in the past. Their testimony was admitted for the purpose of showing a common scheme, plan, or system. However, neither of the admitted drug dealers who testified were involved in the drug shipments for which Paulson was charged. In *Paulson* we held that "as to crimes, wrongs or acts *other than those upon which the defendant is charged*, accomplice testimony need not be corroborated before it is admissible." *Paulson*, 250 Mont. at 38, 817 P.2d at 1140 (emphasis added).

¶16     Byers urges us to distinguish the facts of *Paulson* from the facts of the present case because here, Daricek, the accomplice, was facing charges relating to his acts with Byers on a different Count. However, based upon the plain meaning of § 46-16-213, MCA, we find that Daricek was not an accomplice to Count I, and hold, therefore, that Daricek's corroborative testimony was proper under the requirements of § 46-16-213, MCA. The District Court did not err when it denied Byers' motion for a directed verdict as to Count I.

6

ISSUE TWO

¶17     Did the District Court err when it found that there was sufficient evidence to corroborate the accomplice evidence as to Count II?

¶18     After the search of the Toth/Hein apartment, police received an anonymous Crimestoppers tip that a man named Tom and his daughter were operating a methamphetamine lab in a tan Winnebago behind Pro-Align in Missoula. Tom was identified as Tom Turner ("Turner"). Law enforcement officers conducted surveillance of the Winnebago and the premises by which it was parked, 2304 ½ Ernest. During their surveillance, the officers observed a silver Mercury Topaz belonging to Byers.

¶19     The police obtained a search warrant for the Winnebago, the house on Ernest, and the Mercury Topaz. When the officers arrived to execute the search warrant, the Winnebago was not there. One of the detectives testified that he saw the Winnebago turn into the alley, but when the driver spotted the officers, he stopped the Winnebago abruptly, backed it out of the alley, and proceeded north on Clark Street. As the officers approached the house, Daricek attempted to leave by a back door. He was apprehended and taken into custody. Byers, who was inside the house, was also taken into custody.

¶20     A second Crimestoppers tip informed the police that someone in a Winnebago was dumping something into a Dumpster near Community Hospital. The time frame the caller identified was consistent with the time between when the Winnebago was observed leaving the scene of the search and when the Winnebago was located and seized by the police. Turner testified that he was the driver of the Winnebago and he threw tubs and suitcases,

7

which contained a methamphetamine lab, into a Dumpster behind Community Hospital.

¶21    The search of the house yielded items that were related to methamphetamine, but the house did not contain a complete methamphetamine lab. Detectives found a crack pipe and a plastic cup with a chemical smell and reddish liquid consistent with the color of iodine or red phosphorus, which are required for certain methods of producing methamphetamine.

¶22    In the Mercury Topaz, the detectives found items including a "fix kit" containing syringes, a spoon, and methamphetamine residue; a digital scale, commonly used by drug dealers to accurately measure small amounts; a crack pipe; a small black bag containing a "fix kit" and coffee filters; a blue bag containing a "fix kit;" magazines with squares cut out of the pages, commonly used to package methamphetamine because magazine paper is not porous; and a coffee filter containing residue of methamphetamine. The Mercury Topaz also contained a notebook listing amounts of items, including pseudoephedrine and iodine, and a piece of paper listing ounce to gram conversions.

¶23    The Winnebago contained items commonly used in the production of methamphetamine, including a hand blender with white powder residue, matchbooks with the cover and striker plates missing, Sudafed pills, and red phosphorus. Detectives also found a crack pipe and a red cloth in the sink.

¶24    Bahne Klietz, a forensic scientist at the Montana State Crime Lab, analyzed the items seized from the Winnebago and the Dumpster. She testified that more than one process is available to make methamphetamine. Based upon her analysis, Klietz was able to conclude that the red phosphorus/iodine method was used to make methamphetamine with the items

8

seized from the Winnebago and Dumpster. Under this method, the red phosphorus and iodine are reagents used to react with pseudoephedrine, usually purchased as cold pills, to convert it to methamphetamine.

¶25 At the time of Byers' trial, Turner had not been charged with any criminal offense, and Daricek accepted a plea agreement for two counts of felony possession of methamphetamine and was granted use immunity for his testimony against Byers.

¶26 In Count II, Byers was charged with criminal production or manufacture of dangerous drugs, a felony, in violation of §§ 45-9-102 and 45-9-110, MCA. It was alleged that on or about October 22 through November 1, 2000, Byers purposely or knowingly produced, manufactured, prepared, cultivated, compounded or processed methamphetamine, a dangerous drug as defined in § 50-32-101, MCA.

¶27 On appeal, Byers argues that evidence connecting him to the methamphetamine lab found in the Dumpster is insufficient. Because Turner and Daricek are accomplices as to Count II, their testimony must be corroborated by other evidence that in itself tends to connect the defendant with the commission of the offense, pursuant to § 46-16-213, MCA, as we discussed above.

¶28 We find that other evidence against Byers', unrelated to the testimony of Turner and Daricek, is sufficient to provide independent corroboration. Byers was present at the house when the search warrant was executed upon the house and his Mercury Topaz. The Mercury Topaz contained items used by drug dealers and methamphetamine manufacturers, namely a digital scale, magazines cut into squares, methamphetamine residue, and clothing stained

with iodine. The clothing stained with iodine is particularly significant because, as stated above, the methamphetamine lab found in the Dumpster used the red phosphorus/iodine method of manufacture. Clothes are typically stained with iodine when manufacturing methamphetamine using the red phosphorus/iodine method. Additionally, Toth and Hein, accomplices as to Count I, were able to corroborate the testimony of Daricek and Turner that Byers knew the recipe for methamphetamine.

¶29 When viewed in the light most favorable to the State, we conclude that there was sufficient corroborating evidence for the testimony of Turner and Daricek. A jury could reasonably infer that Byers was involved in the manufacture of methamphetamine using the lab found in the Dumpster. We hold that the District Court did not err in denying Byers' motion for a directed verdict as to Count II.

¶30 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER
/S/ JIM RICE