No. 02-469

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 253

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

TIMOTHY T. HALL,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DC-01-015,
Honorable John Warner, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Jeremy S. Yellin, Attorney at Law, Fort Benton, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General, Ilka Becker, Assistant
Attorney General, Helena, Montana

        David Rice, Hill County Attorney, Havre, Montana

Submitted on Briefs:  April 10, 2003

Decided:  September 23, 2003

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Appellant, Timothy T. Hall (Hall), appeals his convictions of misdemeanor theft, felony theft, and designation as a persistent non-violent felony offender and corresponding sentence of eleven years.

¶2     The issues on appeal are as follows:

¶3     1.  Did the District Court err in denying Hall's pre-trial motion to suppress evidence?

¶4     2.  Did the District Court err in denying Hall's proposed jury instructions?

¶5     3.  Did the District Court err in denying Hall's motion for a directed verdict on the close of evidence?  Was there sufficient evidence to support the convictions for theft?

¶6     4. Did the District Court violate Hall's due process rights by punishing him for going to trial, when the sentence given was harsher than that offered before trial?

¶7     We affirm the convictions and remand for re-sentencing.

FACTUAL and PROCEDURAL BACKGROUND

¶8     Hall admits to having problems with gambling, drugs, and alcohol.  To pay for these activities, Hall has committed numerous and sundry nonviolent property crimes.  He has spent substantial periods of his life incarcerated.

¶9     In January of 2001, the District Court modified the conditions of Hall's release on a previous matter.  Hall was to remain law abiding, avoid alcohol and controlled substances, and reside with his friend, Seth Nelson (Nelson), at 1715 Second Street, Havre.  As a condition of the modification, the District Court had Nelson explicitly agree to supervise

Hall, report any violations, and allow law enforcement to search the premises as needed to ensure compliance with the conditions.

¶10    Greg Baltrusch (Baltrusch) owns the old Farmer's Grain Exchange in Havre. He uses the back half of the structure for grain storage and a seed cleaning business and leases the front half to a professional photographer, Richard Ervin (Ervin), for his R & R Studio. On January 12, 2001, Ervin discovered his studio had been burglarized and notified Baltrusch and the Hill County Sheriff. Deputies Reichelt and Dwyer went to the studio where Ervin told them he was missing almost all of his camera equipment worth approximately $40,000, his Compaq Presario computer, a portable CD player, a paper shredder, and about $300 in cash. Baltrusch was missing an FM two-way radio, an electronic scale, a telephone headset, and a charger for the radio.

¶11    Baltrusch's building has no insulation and is essentially comprised of sheets of tin screwed onto a wood frame. The investigation revealed a corner of tin sheeting had been pried open in the back corner of the elevator office, sufficient to allow entry for a small person. Inside the office, laying on the floor near the opening was a black Harley Davidson baseball cap. The opening and cap were photographed, and the cap was seized as evidence. Baltrusch and Ervin did not lock the inside doors between their businesses, so that when entry was made into one, movement could easily be had between the two. On the other side of the building, laying on the ground was a bolt, which was normally used to prevent the opening of an overhead garage door. On the threshold of that door was a clear footprint in

3

grain dust, later determined by the Montana State Crime Lab to match a left size fifteen Adidas shoe.

¶12    When Deputy Federspiel arrived at work on the evening of January 12, he was informed of the burglary and that Hall was a suspect, because Hall had previously done odd jobs for Ervin. Deputies Federspiel and Marden went to the 1715 Second Street address with a warrant for Hall's arrest for an unrelated charge of forgery. Hall answered the door and was arrested. Hall protested that he had already taken care of the forgery charge and had the paperwork to prove it. Hall asked Nelson, who was also present, to go and get his paperwork. While Marden kept Hall in custody, Federspiel accompanied Nelson to a bedroom to get Hall's paperwork. While in the bedroom, Federspiel saw a laptop computer with an external zip drive on the bed. The deputies then took Hall to the station. However, Federspiel returned shortly thereafter to double-check Hall's paperwork. Once again, he accompanied Nelson into the bedroom where he saw a CD player, and noted the laptop was playing music.

¶13    Federspiel then left to prepare an application for a search warrant. He posted an officer on the street outside the residence to make sure nothing was removed until he could return with the warrant. Approximately three hours later, Federspiel returned with Deputy Dwyer and a search warrant. Officers searched Nelson's home and found Ervin and Baltrusch's missing equipment and other items of contraband. The computer was in a bag behind the couch. Some of the photography equipment was in the south bedroom shared by Nelson and Hall, while the rest was discovered in a storage closet.

4

¶14 Hall was charged by information with two counts of burglary and one count each of misdemeanor and felony theft. Hall moved to suppress and dismiss, claiming the evidence underlying probable cause for the search warrant was itself obtained by an illegal search, and therefore should be suppressed. The District Court rejected this argument because Federspiel was lawfully in the bedroom. He not only had Nelson's express permission to search the premises as a condition of Hall's previous release, but further, Federspiel's presence in the bedroom was acceptable procedure to ensure officer safety.

¶15 Plea bargaining negotiations took place, and a deal was almost struck. At an omnibus hearing, the District Court noted that Hall had just been sentenced to eleven years in Montana State Prison on a charge of forgery. The court indicated:

> if a plea bargain arrangement were reached, whereby Mr. Hall were to plead guilty to receiving stolen property, which I believe is a theft charge; and the State would recommend a sentence of five years, and a persistent felony offender status, or sentence for five years running concurrent. And both of these running concurrent with the eleven years on the other case. The Court would be inclined to accept that.

¶16 Hall rejected the plea-bargain, and trial was held. The State presented the aforementioned facts. In addition, two Montana State Crime Lab employees testified. The first employee testified that DNA taken from the Harley Davidson baseball cap found at the scene matched samples taken from Hall and Nelson, as well as indicating the presence of DNA from an unknown third party. The second employee testified that Nelson's left, size fifteen Adidas shoe was a match to the print found at the scene. At the close of the State's case-in-chief, Hall moved for a directed verdict. The District Court denied the motion. The

5

jury found Hall guilty of one count of misdemeanor theft and one count of felony theft. At sentencing, the District Court sentenced Hall to six months in the county jail for the misdemeanor to be served concurrently with the sentence of six years at Montana State Prison for the felony theft. Also, Hall was found to be a persistent felony offender and was sentenced to an additional five years. The sentences were ordered to run consecutively to each other, creating a total sentence of eleven years.

## DISCUSSION

¶17    1. Did the District Court err in denying Hall's pre-trial motion to suppress evidence?

¶18    This issue is set forth in the brief as being raised by Hall individually rather than by his counsel on appeal. There is no discussion of the issue or citation to authority. Appellant's counsel states the issue is brought "pursuant to" *Anders v. California* (1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493. In its answer brief, the State questions the propriety of raising an *Anders* issue in the context of other nonfrivolous appeal issues. Despite appellant counsel's reference to *Anders*, we do not deem this to be an *Anders* issue.

¶19    *Anders* sets forth a standard for effective representation of counsel on appeal for indigent clients when counsel believes no meritorious issues exist. "[T]he *Anders* procedure is merely one method of satisfying the requirements of the Constitution for indigent criminal appeals. States may–and, we are confident, will–craft procedures that, in terms of policy, are superior to, or at least as good as, that in *Anders*." *Smith v. Robbins* (2000), 528 U.S. 259, 276, 120 S.Ct. 746, 759, 145 L.Ed.2d 756, 774. Montana adheres to *Anders* as codified

6

in statute and adopted in case law. Section 46-8-103, MCA; *State v. Swan* (1982), 199 Mont. 459, 469, 649 P.2d 1297, 1302.

¶20 The statute provides, in relevant part:

> (2) If counsel finds the defendant's case on appeal to be wholly frivolous, counsel shall advise the court of that fact and request permission to withdraw. The request to withdraw must be accompanied by a memorandum referring to anything in the record that might arguably support the appeal. The defendant is entitled to receive a copy of counsel's memorandum and to file a reply with the court.

Section 46-8-103(2), MCA.

¶21 The Montana statute only contemplates an *Anders* procedure where the appeal is otherwise *wholly* frivolous and counsel seeks to withdraw. Furthermore, counsel must supply a memorandum citing anything in the record which might support the appeal. *State v. Adams,* 2002 MT 202, ¶ 15, 311 Mont. 202, ¶ 15, 54 P.3d 50, ¶ 15.

¶22 At its heart, any *Anders* procedure is asking permission for counsel to withdraw while still providing the defendant with the benefits of an attorney's representation. Hall's counsel has not asserted the appeal is wholly frivolous, nor has he sought to withdraw. Counsel is certainly free to advise the court of Hall's wish to present an issue which counsel deems to be frivolous. However, mere recognition of the situation does not satisfy the *Anders* procedure and we decline to treat it as an *Anders* issue. Likewise, we decline to address the merits.

¶23 2. Did the District Court err in denying Hall's proposed jury instructions?

7

¶24 The standard of review of jury instructions in criminal cases is whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Strauss,* 2003 MT 195, ¶ 47, 317 Mont. 1, ¶ 47, 74 P.3d 1052, ¶ 47. A district court has broad discretion when it instructs the jury. *State v. Courville,* 2002 MT 330, ¶ 15, 313 Mont. 218, ¶ 15, 61 P.3d 749, ¶ 15.

¶25 Hall offered the following jury instruction:

> Testimony of person legally accountable: A person may not be found guilty of an offense on the testimony of one responsible or legally accountable for the same offense, as defined in 45-2-301, unless the testimony is corroborated by other evidence that in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense.

¶26 Hall also offered an instruction which differed from Montana Criminal Jury Instruction No. 1-012, replacing the phrase, "A person is legally accountable for the conduct of another when: [Here insert applicable section of MCA 45-2-302]" with "A person is legally accountable for an offense when he is legally responsible for a criminal act." Hall offered the latter because his theory was Nelson was not an accomplice but rather was the sole culprit.

¶27 Although rejecting a theory of accountability, Hall still wanted the jury instructed to view with distrust the testimony of someone legally accountable for the act of the accused, in accordance with § 26-1-303(4), MCA.

¶28 The District Court rejected the instructions and argument, stating,

> [i]f the defense is that Mr. Hall, the defendant here, did not do it, he was not there and is not culpable and not responsible, so be it. But then in such event,

8

Mr. Nelson is not an accomplice, nor is he legally accountable within the meaning of the instruction. He just did it.

¶29 Hall now appeals the refusal to instruct the jury to treat accomplice testimony with distrust. Implicit in this argument on appeal is the assumption that the jury convicted Hall solely based on the testimony of Nelson, without corroboration by other evidence. The transcript does not support this view. Rather, there is other evidence and testimony implicating Hall and what amounts to a denial of any knowledge on the part of Nelson. Nelson did not admit to the crime, nor did he admit to any element which would establish his legal accountability.

¶30 Hall cites *Laubach*, for the proposition that a conviction requires more in way of corroboration than testimony of one who is legally accountable. *State v. Laubach* (1982), 201 Mont. 226, 229-31, 653 P.2d 844, 846. Hall overlooks that *Laubach* was "overruled to the extent that it requires giving the [§ 26-1-303(4), MCA] instruction in all cases involving accomplice testimony." *State v. Johnson* (1992), 257 Mont. 157, 163, 848 P.2d 496, 499 (counsel opted not to request the instruction as inconsistent with defendant's testimony of innocence, it was therefore a tactical decision and not ineffective assistance of counsel). *Johnson* limited the *Laubach* holding to require the instruction only on "all proper occasions." *Id.* In *Johnson*, the instruction would have been proper because an accomplice gave direct testimony, which itself established the elements of accountability. Here, the witness's testimony established no element of accountability and the accomplice instruction was inconsistent with the defendant's theory of complete innocence. Normally, whether a

party was or was not an accomplice is reserved for the province of the jury. *See, State v. Blackcrow*, 1999 MT 44, ¶ 21, 293 Mont. 374, ¶ 21, 975 P.2d 1253, ¶ 21. However, it is not proper to give an accountability instruction where it is not supported by the evidence and is inconsistent with the defendant's claim of innocence. The District Court did not abuse its discretion in denying the instruction.

¶31    3. Did the District Court err in denying Hall's motion for a directed verdict on the close of evidence? Was there sufficient evidence to support the convictions for theft?

¶32    We review the denial of a motion for directed verdict in the same manner that we review the sufficiency of evidence to support a conviction. *State v. Byers*, 2003 MT 83, ¶ 6, 315 Mont. 89, ¶ 6, 67 P.3d 880, ¶ 6. The sufficiency of evidence is reviewed to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Bauer,* 2002 MT 7, ¶ 15, 308 Mont. 99, ¶ 15, 39 P.3d 689, ¶ 15. The decision to direct a verdict lies at the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *Byers,* ¶ 6.

¶33    Hall was convicted of misdemeanor and felony theft. Section 45-6-301(1), MCA, provides:

> A person commits the offense of theft when the person purposely or knowingly obtains or exerts unauthorized control over property of the owner and:
>
> (a) has the purpose of depriving the owner of the property;
> (b) purposely or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or

(c) uses, conceals, or abandons the property knowing that the use, concealment, or abandonment probably will deprive the owner of the property.

¶34    Hall now contends that (A) the evidence was insufficient on the element of control, (B) the evidence was insufficient as to the value of the goods to make the offense a felony, (C) the verdict of guilty on the counts of theft is inconsistent with innocence for the burglary charges, and (D) the only rational theory as established by the evidence was Nelson's guilt to the complete exclusion of Hall.

¶35    Hall's argument on the issue of control is a misreading of this Court's decision in *State v. Campbell* (1978), 178 Mont. 15, 18, 582 P.2d 783, 785.  In *Campbell*, the evidence was found inconclusive as to defendant's continued occupancy of the house in which the stolen goods were found.  The element of control in a joint living situation depends on the proof of occupancy and access to the goods.  In *Treible*, stolen goods found in the common area of a trailer were sufficient to meet the element of control for the defendant who rented a room in the trailer and was present in the trailer with the stolen goods.  *State v. Treible* (1996), 275 Mont. 59, 910 P.2d 237.  The element of control was also met where the defendant was an intermittent guest who slept on a couch in an apartment in which stolen goods were found in the bedroom, because the defendant had a good relationship with the lessees and was provided access to the bedroom.  *State v. Jungers* (1990), 245 Mont. 519, 522-23, 802 P.2d 615, 617-18.

¶36    The present situation is distinguishable from the facts in *Campbell,* and in line with *Treible* and *Jungers*.  It was undisputed that Hall had occupied the trailer in the two weeks

11

prior to his arrest, and the stolen goods were discovered in the trailer. Nelson testified he and Hall shared the south bedroom. Nelson also testified that the south bedroom led into a bathroom, from which the storage area was accessible. Although a deputy testified that during the search, both doors of the storage area were locked, Nelson testified that the door between the storage area and the bathroom did not lock. It was in this storage area that police found much of Ervin's stolen photography equipment and Baltrusch's missing scale. Other bags of Ervin's photography equipment were also found in the south bedroom. The laptop computer was found in a black bag behind the couch in the living room. Viewed in the light most favorable to the prosecution, there was sufficient evidence for a rational trier of fact to find Hall exercised control over the stolen goods.

¶37    Hall next contends the evidence was insufficient on the value of the stolen goods to make the offense a felony. Montana law provides theft of goods valued at over $1,000 is a felony. Section 45-6-301(8)(b), MCA. Hall presumes the only stolen good considered was the laptop, for which no valuation evidence was provided. However, Hall exercised control over all of the photography equipment. Ervin testified that his photography equipment was worth about $40,000. We have previously considered evidence of value sufficient where the victim's testimony as to value was uncontroverted. *State v. Pitzer,* 2002 MT 82, 309 Mont. 285, 46 P.3d 582. Based on Ervin's testimony, viewed in the light most favorable to the prosecution, a rational trier of fact could have determined the value of the stolen goods in Hall's control was over $1,000.

¶38     Hall advances no authority for his next two contentions:  the inconsistency of the verdict and Nelson's guilt as the only rational theory.  In accordance with Rule 23(a)(4), M.R.App.P., we decline to further address his unsupported contentions.

¶39     4. Did the District Court violate Hall's due process rights by punishing him for going to trial, when the sentence given was harsher than that offered before trial?

¶40     Prior to Hall's trial, the District Court indicated that it was aware of on-going plea negotiations and that, if Hall were to plead guilty, the District Court would impose a sentence of no more than eleven years to run concurrently with a sentence Hall had just received on a charge of forgery.  When the plea negotiations failed and Hall was convicted, he argued that any sentence should run concurrently with the forgery sentence because the theft offenses were part of the same single criminal episode as the forgery, as contemplated by the Commission Comments to § 46-18-401(4), MCA.  The District Court rejected this argument, calling Hall's conduct part of a "continuing course of criminal conduct, some more serious than others, but it's not part of the same episode."  Hall was then sentenced to serve six months on the misdemeanor theft charge to run concurrently with a sentence of six years for the felony theft charge and an additional five years as a persistent felony offender.  The sentences were ordered to run consecutively to each other, creating a total sentence of eleven years.  The sentencing order is silent as to whether this sentence would run concurrently with the previous sentence of forgery.  However, unless the court otherwise orders, separate sentences are not merged.  Section 46-18-401, MCA.

¶41 Hall now claims on appeal that the difference between the District Court's pre-trial offer and the actual sentence imposed gives rise to a presumption that Hall is being punished for having gone to trial instead of pleading guilty. The State agrees with Hall and recommends a remand for re-sentencing. We agree.

¶42 Punishing a person for exercising a constitutional right is a basic due process violation. *State v. Baldwin* (1981), 192 Mont. 521, 525, 629 P.2d 222, 225. *Baldwin* set forth the rule in Montana that, when a District Court becomes involved in the plea negotiations and an offer is made, any difference in the sentencing after trial must point out the factors which justify the increased sentence. Failing to point to such factors gives rise to a presumption "that a greater sentence has been imposed for a vindictive purpose - a presumption that must be rebutted by 'objective information . . . justifying the increased sentence.'" *State v. Hubbell*, 2001 MT 31, ¶ 26, 304 Mont. 184, ¶ 26, 20 P.3d 111, ¶ 26; citing *Texas v. McCullough* (1986), 475 U.S. 134, 142, 106 S.Ct. 976, 981, 89 L.Ed.2d 104. In *Brown*, this Court determined the district court had not participated in the plea negotiations and was therefore not required to list the specific factors considered. *State v. Brown,* 2003 MT 166, ¶ 31, 316 Mont. 310, ¶ 31, 71 P.3d 1215, ¶ 31. The *Brown* district court nonetheless listed specific factors it considered which would have been sufficient to comply with the *Baldwin* standard. *Brown*, ¶ 32.

¶43 Although the District Court noted that Hall posed a substantial danger to the public if he was not incarcerated for a substantial period of time, it did not explain why the sentence was more onerous than the sentence offered before trial. When the District Court failed to

14

specifically justify having the eleven-year sentence run consecutively rather than concurrently with the forgery sentence, it failed to satisfy the *Baldwin* standard which requires an explanation for imposing a sentence more harsh than that offered in plea negotiations.

¶44     The convictions are affirmed, and the matter is remanded for re-sentencing.


                                        /S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE