JUSTICE WARNER
dissents.
¶29 I dissent. This decision will fragment our jurisprudence defining probable cause sufficient to support a search warrant. I would apply the same rules for issuing a search warrant for a residence as I would apply to one’s person, one’s medical records, one’s automobile, and yes, to one’s garage. I would also apply, contrary to what the Court does here, the totality of circumstances test, and common sense.
¶30 Although I emphatically agree with the Court that probable cause to search a detached garage does not automatically translate into probable cause to search a person’s residence on the same property, the warrant was proper as to both structures in this instance. A warrant may issue covering two separate structures based upon information regarding only one structure where, like here, there is a showing that the separate structures are related to each other or used in connection with each other in some material way. See Steele v. United States (1925), 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed.2d 757.
¶31 The Court states: “the mere portability of items commonly used in a methamphetamine laboratory does not justify the search of otherwise unimplicated structures.” ¶ 24. This statement blithely disregards the probability that methamphetamine itself would bp found where the defendant was. I also find particularly troublesome the Court’s implication that from now on, in Montana, a home can no longer be the subject of a search warrant unless there is probable cause that relates directly to the home, no matter what the totality of circumstances, or common sense, indicate. These statements disregard our existing jurisprudence defining the permissible breadth of a search warrant, abrogate the common sense and totality of the circumstances approach to the breadth of search warrants, and make law *122 enforcement’s job infinitely more difficult.
¶32 “In dealing with probable cause ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.” State v. Rinehart (1993), 262 Mont. 204, 210, 864 P.2d 1219, 1222-23; State v. Kelly (1983), 205 Mont. 417, 439, 668 P.2d 1032, 1044. We have long held that search warrant applicants need only establish the probability of criminal activity, not a prima facie showing of criminal activity. State v. Crain (1986), 223 Mont. 167, 169, 725 P.2d 209, 210.
¶33 A search will be upheld if “the nexus between the items to be seized and the place to be searched rested not on direct observation ... but on the type of crime, the nature of the missing items, the extent of the suspect’s opportunity for concealment, and normal inferences as to where a criminal would be likely to hide [the contraband].” State v. Pease (1986), 222 Mont. 455, 465, 724 P.2d 153, 159 quoting United States v. Spearman (9th Cir. 1976), 532 F.2d 132.
¶34 In Pease, the defendant attempted to suppress evidence seized from his home and his vehicle arguing that probable cause did not exist to search those locations. Pease, 222 Mont, at 464-65, 724 P.2d at 159. Law enforcement had found the body of a homicide victim outside defendant’s workplace and evidence indicating that the location of the crime was defendant’s workplace. Officers were seeking additional evidence including: the murder weapon, possible souvenirs taken by the perpetrator, and personal effects of the victim - items likely to be kept at the residence of the person or persons involved. In addition, law enforcement was seeking a number of other items related to the crime, individually innocuous, that were likely to be present in a vehicle or residence. Pease, 222 Mont. at 466, 724 P.2d at 159-60. In Pease, although the evidence indicated that the crime was committed in the defendant’s workplace, because of the nature of the crime we held that probable cause existed to believe evidence would also be present in the defendant’s vehicle and his residence.
¶35 Similarly, the affidavit in this case indicated that the manufacture of methamphetamine was taking place in the garage located next to the house. This should not preclude a finding of probable cause that evidence of the criminal activity would also be found in the defendant’s residence. Although the informant’s observations indicated the manufacturing was in the garage, the affidavit also stated that the informant had observed the transfer of methamphetamine from Graham’s garage to the informant’s vehicle. The informant reported *123 taking a person named John to the residence, and that John cooks methamphetamine for Graham. Further, the informant reported that when he picks John up from the residence, the informant would sometimes get methamphetamine from him. This, under our law, constitutes a sale. Section 45-9-101, MCA. The informant also told law enforcement that yet another person, Chris, taught Graham how to “cook methamphetamine” and would “get methamphetamines [sic] from [Graham].” Chris, the informant told the police, cooks methamphetamine for different people and also shows them how to cook. The officer seeking the warrant reported that based on his experience “drug traffickers/manufactures often have other people transport precursors or other items on a regular basis to keep the process on-going and to divert attention from themselves.”
¶36 Based upon this evidence of distribution, as well as the officer’s knowledge and experience, a logical nexus existed between the manufacturing site and the residence next to it, where the defendant lived. An issuing magistrate, using a common sense approach, and considering the totality of the circumstances, could easily find that the facts lead to a natural inference that contraband would likely be found in the house especially considering the items sought by law enforcement. See Pease, 222 Mont. at 465, 724 P.2d at 159.
¶37 We, like other courts, have recognized that drug trade is a very mobile and portable criminal undertaking. See State v. Byers, 2003 MT 83, ¶ 8, 315 Mont. 89, ¶ 8, 67 P.3d 880, ¶ 8 (portable methamphetamine lab found in duffle bag); State v. Galpin, 2003 MT 324, 318 Mont. 318, 80 P.3d 1207 (officer’s knowledge that chemicals used to manufacture methamphetamine are easily mobile, highly toxic, and even explosive justified precautionary search of defendant’s duffle bag incident to arrest); State v. Miles (Kan. 1983), 662 P.2d 1227, 1237 (recognizing “[a]s modern American society becomes increasingly mobile, drugs clandestinely manufactured ... are easily transported”); People v. Smith (Ct. App. 1980), 166 Cal.Rptr. 778, 785 (Zenovich, J., dissenting) (discussing issue of staleness in regards to drugs which are easily transportable, consumed, or hidden).
¶38 Law enforcement is also familiar with methamphetamine manufacturers’ efforts to avoid detection, including the production of the drug in a piecemeal fashion. People v. Hard (Ct. App. 2003), 5 Cal.Rptr.3d 107, 112 (“[t]he production of methamphetamine is an incremental, not instantaneous process, often conducted in a piecemeal fashion to avoid detection”).
¶39 This knowledge and common sense strengthen the likelihood that *124 evidence of drag manufacturing would be found in the manufacturer’s home as well as his garage. The officer seeking the warrant stated that based on his experience as a Peace Officer in Montana for 22 years, 16 of which he was specifically assigned to investigate and enforce the Dangerous Drug Laws of Montana, manufacturers commonly use illicit drags themselves and therefore are likely to keep instruments of inhalation or other preferred use apparatus around.
¶40 Here, the Court requires more than this probability of criminal activity in the home, and seemingly imposes a direct observation standard for probable cause to attach to the home. Contra State v. Pease, 222 Mont. at 465, 724 P.2d at 159.
¶41 I do not harbor the opinion that there should be any type of “meth lab exception” to the constitution and the statutes. I am of the opinion that, in determining whether there is sufficient probable cause to search a residence, the totality of circumstances should be considered, which includes the use and nature of the items sought, as well as the nexus between separate structures. And, I also think that common sense should not be thrown out the garage window.
¶42 I would conclude the District Court’s decision, that the magistrate made a practical, common sense determination there was a fair probability that contraband or evidence of a crime would be found in the residence, is correct.
¶43 I dissent.
JUSTICE RICE joins in the foregoing dissent.