DA 12-0363

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 344N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JOSHUA JEREMY PELTIER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 2010-536
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Colin M. Stephens, Smith & Stephens, P.C.; Missoula, Montana

      For Appellee:

      Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General; Helena, Montana

      Fred Van Valkenburg, Missoula County Attorney, Jason Marks, Deputy
Missoula County Attorney; Missoula, Montana

Submitted on Briefs:  October 23, 2013

Decided:  November 13, 2013

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Appellant Joshua Jeremy Peltier (Peltier) appeals his conviction from the Fourth Judicial District, Missoula County. We affirm.

¶3      Peltier followed C.B., a 26-year-old female, in his "pretty old car," while C.B. rode her bike to work on the evening of November 26, 2010. Peltier eventually parked his car ahead of C.B. When she rode nearer to his car, Peltier knocked C.B. off her bike. Peltier then "punched [her] several times and also bashed [her] head into the pavement." Peltier unsuccessfully attempted to remove C.B.'s pants. Peltier forced his hands into C.B.'s pants and penetrated C.B.'s vagina with his finger. A car drove up and parked nearby which resulted in Peltier taking C.B.'s backpack and "jogg[ing] away." C.B. then used her cell phone to call 911. Missoula police responded and interviewed C.B. about the assault.

¶4      Five days later on December 1, 2010, Peltier attacked a second victim. K.P., a 29-year-old-female, was walking her dog near the Orange Street underpass structure in Missoula before an early morning work shift. Peltier approached K.P, "grabbed [her] and started shoving [her] toward his car." Peltier failed to force K.P. into his car, but nonetheless "pulled [K.P.'s] pants down a little bit," "put his fingers inside" "both [her] vagina and [her] anus," and "put his penis inside both [her] vagina and [her] anus."

2

¶5 Peltier left K.P. and drove away after the assault. Peltier had taken the dog's leash and collar, K.P.'s cell phone, K.P.'s bag, and K.P.'s coat. K.P. walked to Saint Patrick's Hospital in Missoula. Hospital personnel admitted K.P., took a rape kit and called a police officer to interview K.P.

¶6 Missoula Police Detective Jamie Merifield located Peltier's vehicle on the next day, December 2, 2010, based upon descriptions from C.B. and K.P. Detective Merifield's search of Peltier's vehicle, home, and the surrounding areas produced that property which had been taken from C.B. and K.P. Missoula Police Detetive Guy Baker interviewed Peltier on the same day. Detective Baker observed recent injuries on Peltier's neck and hand. Peltier consented to a DNA test. The results of the DNA test could not exclude Peltier as a contributor to the DNA collected as part of K.P.'s rape kit.

¶7 Detective Richard Chrestenson also interviewed Peltier on December 2, 2010. During the interview Peltier admitted "being involved in both of those attacks [on C.B. and K.P.]" Peltier also claimed that he had imbibed large quantities of alcohol on the night that he assaulted K.P. Peltier admitted that he had approached K.P, but claimed that he was unable to remember the night of the assault on K.P. due to the alcohol. Peltier further claimed that he had tried to reach into C.B.'s pockets to take money, but that he accidentally had reached down the front of her pants instead.

¶8 The State of Montana (State) charged Peltier on December 16, 2010, with two counts of robbery, one count of sexual assault, one count of sexual intercourse without consent, one count of attempted kidnapping, and one count of tampering with evidence. Peltier proceeded

to trial on January 5, 2012. The District Court instructed the jury on the definitions of "purposely" and "knowingly." The District Court drafted the instructions. Neither party objected to the District Court's instructions. The jury found Peltier guilty of all counts. Peltier appeals.

¶9     Peltier argues that the District Court failed in its jury instructions to distinguish between conduct oriented offenses and result oriented offenses. Peltier cites the fact that the District Court did not instruct the jury about the purposely and knowingly element of each offense. Peltier further argues that the District Court effectively lowered the State's burden of proof by not requiring the State to prove that Peltier purposely or knowingly had committed each element of each offense. Peltier finally argues that he received ineffective assistance of counsel when his counsel failed to object to the District Court's jury instructions.

¶10    We review for abuse of discretion jury instructions to determine whether the jury instructions, as a whole, fully and fairly instructed the jury on the law applicable to the particular case. *State v. Johnston*, 2010 MT 152, ¶ 7, 357 Mont. 46, 237 P.3d 70. We have determined to decide this case pursuant to Section I, Paragraph 3(d), of our 1996 Internal Operating Rules, as amended in 2006, that provide for memorandum opinions.

¶11    Peltier attacked two women in their mid-twenties on separate occasions. Peltier forcibly attempted to remove each woman's pants. He inserted his hands into each woman's vagina and anus. Peltier penetrated one woman's vagina and anus with his penis. He stole property that belonged to both women. Peltier fails to demonstrate that he did not knowingly

4

or purposely engage in any of the conduct. The jury clearly understood what it meant to intend to engage in some conduct, and to do so with purpose. It is manifest on the face of the briefs and the record before us that the District Court did not abuse its discretion in instructing the jury as it did.

¶12    Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE

5