No. 04-603

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 328

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

DONALD EUGENE AZURE,

        Defendant and Appellant.

APPEAL FROM:    The District Court of the Eighth Judicial District,
                    In and For the County of Cascade, Cause No. ADC 97-072(C),
                    Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Travis Cushman, Attorney at Law, Great Falls, Montana

        For Respondent:

        Hon. Mike McGrath, Montana Attorney General, Jim Wheelis,
        Assistant Attorney General, Helena, Montana

        Brant S. Light, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  November 2, 2005

Decided:  December 20, 2005

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Following a four-day jury trial in January 2004, Donald Azure (Azure) was convicted by unanimous verdict of felony deliberate homicide and felony criminal endangerment. He appeals on the grounds that the jury was impaneled improperly and that the District Court gave an erroneous jury instruction for the charge of criminal endangerment. We affirm.

## ISSUES

¶2 A restatement of the issues on appeal is:

¶3 Was Azure's jury venire improperly impaneled?

¶4 Did the District Court correctly instruct the jury on the elements of criminal endangerment?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Azure was charged with deliberate homicide, attempted deliberate homicide and criminal mischief on February 27, 1997. He was tried in October 1997, and convicted of deliberate homicide, mitigated attempted deliberate homicide and criminal mischief. We affirmed his conviction in 2002. The underlying facts pertinent to Azure's original charges and earlier trial have been detailed in *State v. Azure*, 2002 MT 22, 308 Mont. 201, 41 P.3d 899, and will not be repeated here.

¶6 In February 2003, Azure petitioned for postconviction relief claiming that the jury selection process of his 1997 trial violated his constitutional rights. The District Court granted Azure's Petition in November 2003. On December 9, 2003, the State filed an Amended Information charging Azure with deliberate homicide and felony criminal

endangerment.  In preparation for the January 12, 2004, jury trial, the Cascade County Clerk of Court (clerk) began compiling the jury pool.  On January 9, 2004, Azure challenged the panel, arguing it had not been drawn randomly, as required by statute.  The District Court heard the matter on January 12, 2004, and denied Azure's challenge.  The trial commenced on the same day, and Azure was convicted on January 15, 2004.  The court sentenced him on March 3, 2004, imposing the same sentence it had imposed six years earlier, *i.e.*, one hundred (100) years to Montana State Prison (MSP) for deliberate homicide, with an additional ten (10) years for the use of a dangerous weapon in the commission of the crime, and ten (10) years to MSP for criminal endangerment, with an additional two (2) years for the use of a dangerous weapon.  The sentences total one hundred twenty-two (122) years and run consecutively.  Azure filed a timely appeal.

## STANDARD OF REVIEW

¶7      The District Court's decision to deny Azure's challenge to the composition of the jury was a conclusion of law.  Our standard of review for a district court's conclusions of law is plenary and we must determine whether the court's conclusions are correct as a matter of law.  *State v. Bingman*, 2002 MT 350, ¶ 55, 313 Mont. 376, ¶ 55, 61 P.3d 153, ¶ 55 (citation omitted).

3

¶8     We review jury instructions to determine whether the instructions as a whole fully and fairly instruct the jury on the applicable law. A district court has broad discretion in formulating jury instructions, and our standard of review is whether the court abused that discretion. *State v. Meyer*, 2005 MT 215, ¶ 14, 328 Mont. 247, ¶ 14, 119 P.3d 1214, ¶ 14.

## DISCUSSION

¶9     *Was Azure's jury venire improperly impaneled?*

¶10     Azure's jury venire was compiled by combining three separate jury panels that had been randomly selected by computer from the list of Cascade County registered voters. These panels were called for trials scheduled to occur around the same time as Azure's trial. When these other trials did not take place, the jury panels were held over and ultimately assigned to Azure's trial. Panels one and two each originally consisted of seventy persons. Panel three originally consisted of thirty-five persons. Prior to being assigned to Azure's trial, these panels were reduced to forty-six, forty-seven, and twenty-four persons respectively as a result of some jurors being excused by the clerk's office or the judge for legitimate reasons. Additionally, ten people were eliminated for failure to contact the clerk after the summons was mailed to them and the clerk was subsequently unable to reach them.

¶11     Panel one was initially assigned to Azure's trial. However, the District Court notified the clerk several days before the trial that it wanted *at least* eighty prospective jurors in this case. To accommodate this request, the clerk's office added the twenty-four names from panel three to the forty-six names on panel one. This created a pool of seventy people. The clerk then added the first twenty-one names from panel two. However, because panel two had previously been alphabetized, the selected surnames began with the letters A through K,

and the names beginning with the remaining letters of the alphabet were eliminated. Subsequently, one person from panel two was excused, leaving the District Court with ninety potential jurors from which to choose. These ninety names were placed in a box for additional random selection, and the first twenty-seven names selected comprised the venire for the jury and one alternate.

¶12 Azure's complaint on appeal arises from the manner in which panel two was split. He maintains that it was error to alphabetize this list and then select only the first twenty-one persons based upon the first letter of their last names. He posits that once the list was put in alphabetical order and then not used in its entirety, it ceased to be random. He further asserts that when this list was combined with the other panels, the overall jury pool was tainted, he was denied a fair cross-section jury panel, and he is entitled to a new trial.

¶13 Section 3-15-503(1)(b), MCA (1995), upon which Azure relies, states:

> If the drawing of jurors is conducted by means of a computerized database, it must be conducted by use of a computerized random *selection process* that the judges of the district court of the county have approved in writing as satisfactorily fulfilling the requirements for the drawing of trial juries. [Emphasis added.]

¶14 Azure complains his jury panel was not "randomly" selected. Using the ordinary meaning of the term "random," *i.e*., lacking a specific plan or pattern,[1] it could be argued that once the list was alphabetized, it was no longer random. However, to prevail, Azure must prove that the *selection process* was not random. This he has failed to do. Mere alphabetization of a randomly selected list of names and elimination of some of those names

5

based exclusively on where they fall in the alphabet does not taint the random selection process. As a result, we conclude Azure's jury selection process did not violate § 3-15-503(1)(b), MCA (1995).

¶15 Without substantive analysis, Azure relies on *State v. Taylor* (1975), 168 Mont. 142, 542 P.2d 100, and *Taylor v. Louisiana* (1975), 419 U.S. 522, 95 S.Ct. 692, 45 L.Ed.2d 690, in arguing that the alphabetization and subsequent bifurcation of one jury panel "systematically excluded an identifiable class of citizens." Our review of these cases leads us to share Justice Harrison's observation in *State v. Taylor*, "We have no disagreement with the case authority cited by defendant nor the law established by that authority, however, the case authority cited is not applicable to the instant case." While these cases stand for the proposition that a systematic exclusion of *an identifiable class of citizens* violates the requirement that the jury be a fair cross-section of the community, Azure failed to establish that the persons eliminated from the alphabetical list were eliminated based upon their "race, color, sex, culture, social origin or condition, or political or religious ideas." *State v. Taylor*, 168 Mont. at 144, 542 P.2d at 101. Moreover, Azure failed to show any prejudice against him or injury affecting his right to an impartial jury resulting from the alleged discriminatory selection of his jury. *State v. Taylor*, 168 Mont. at 148, 542 P.2d at 103.

¶16 The elimination of panel members from a venire based exclusively on the first letter of the person's last name is not a systematic exclusion of a distinctive, identifiable class of the community. There was no discernible gender, ethnic, or other suspect grouping that occurred

---

[1] The American Heritage Dictionary of the English Language 1448 (4th ed. 2000).

6

when certain names from panel two were used while others were not. Simply put, the twenty-six people from panel two who were not selected for Azure's jury pool do not comprise an "identifiable class of citizens," and the alphabetization of panel two and limited selection therefrom did not run afoul of the statute or applicable case law.

¶17 Lastly, as noted by the District Court in its Order, the jury selection process in the case before us is distinguishable from that utilized in *State v. LaMere*, 2000 MT 45, 298 Mont. 358, 2 P.3d 204. In *LaMere*, the clerk notified prospective jurors of jury duty by telephone instead of through the mail. Noting that this method necessarily eliminated any person who did not have a telephone, or allowed persons with telephones to "excuse himself or herself from possible jury duty simply by failing to return the clerk's phone call," the Court held that the telephone summoning method was a "substantial failure to comply" with relevant jury selection statutes, and materially undermined the purpose of these selection statutes to provide for random selection of jurors on the basis of objective criteria. *LaMere*, ¶¶ 73 and 75. We vacated LaMere's conviction and remanded the matter for a new trial. *LaMere*, ¶ 76. We conclude that Azure has not established that the jury summoning method employed by the clerk in this case was a "substantial failure to comply" with the statutes governing the procurement of a trial jury.

¶18 Therefore, the District Court's decision to deny Azure's challenge to the jury venire was correct and will not be disturbed.

¶19 *Did the District Court correctly instruct the jury on the elements of criminal endangerment?*

7

¶20    A person commits the offense of criminal endangerment when he or she "knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another." Section 45-5-207(1), MCA (1995).  When a criminal offense requires that a defendant act "knowingly," the District Court must instruct the jury on what the term "knowingly" means in the context of the particular crime.  The Montana Criminal Jury Instructions (MCJI) offer the following four separate definitions for "knowingly:"  1) when the person is aware of his or her conduct; 2) with respect to a specific circumstance defined by an offense, when the person is aware of that circumstance; 3) when the person is aware there exists the high probability that the person's conduct will cause a specific result; and 4) with respect to a specific fact, when the person is aware of a high probability of that fact's existence.  We have previously said that courts may not present all four definitions to jurors and require the jurors to select the one definition it believes is most applicable.  *See State v. Lambert* (1996), 280 Mont. 231, 929 P.2d 846 (Leaphart, J., concurring).  Rather, the court must determine which of the four definitions is applicable to the case being heard, and instruct the jury accordingly.

¶21    In the case before us, the State proposed the first two definitions of "knowingly" cited above.  Azure offered no proposed instructions on "knowingly."  During negotiations to settle jury instructions, however, Azure objected to the use of both definitions proposed by the State and proposed instead MCJI definitions three and four.  The District Court initially decided to give instructions on definitions one through three, over Azure's counsel's continued objections.  Immediately before argument, however, the District Court decided to

8

give an instruction on MCJI definition three only. Azure's counsel agreed. Azure now complains that the District Court gave the wrong instruction and the case must be remanded.

¶22 Azure disingenuously implies on appeal that the District Court gave all three definitions it originally indicated that it would. Azure submits that this "allowed the jury to select that definition which it believed was most applicable." The record confirms, however, that the District Court gave an instruction providing a single definition of "knowingly." This complied with *Lambert*, satisfied Azure's objection, was approved by Azure's counsel, and was a proper instruction for the offense of criminal endangerment. The District Court's instruction was not an abuse of its discretion.

## CONCLUSION

¶23 For the foregoing reasons, we affirm the District Court's denial of Azure's jury challenge.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JIM RICE
/S/ BRIAN MORRIS
/S/ JOHN WARNER