

DA 09-0352

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 152

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

KALEM JOHNSTON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DC 08-48
Honorable E. Wayne Phillips, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joslyn Hunt, Chief Appellate Defender; Jennifer A. Hurley, Assistant
Appellate Defender; Helena, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General; C. Mark Fowler, Assistant
Attorney General; Helena, Montana

          Thomas P. Meissner, Fergus County Attorney, Lewistown, Montana

Submitted on Briefs:  June 2, 2010

Decided:  July 13, 2010

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Kalem Johnston (Johnston) was convicted after a jury trial in the Tenth Judicial District Court, Fergus County, of obstructing a peace officer in violation of § 45-7-302, MCA.  He appeals, and we reverse and remand for a new trial.

¶2    We state the issue as follows:

¶3    ***Did Johnston's trial counsel render ineffective assistance by failing to object to the jury instruction defining the mens rea element of the offense of obstructing a peace officer?***

## PROCEDURAL AND FACTUAL BACKGROUND

¶4    On the evening of April 22, 2008, Fergus County Sheriff's Office Deputies Randy Poser and Tracey Lewellen responded to the report of gunshots and a vehicle driving in the vicinity of Maiden Canyon in the Judith Mountains near Hilger, Montana, during winter weather conditions.  After stopping their vehicle because of the road condition, Deputies Poser and Lewellen observed Johnston walking toward them.  They asked him what he was doing and whether he was having any problems on the snowy mountain road.  Johnston informed Poser and Lewellen that the vehicle he was in had become stuck but that everything was fine and the vehicle was "almost unstuck."  The deputies asked Johnston whether other people were stuck further up the mountain.  Although he would not tell the deputies the names of the individuals, Johnston indicated that there were "four or five" other individuals further up the road.

¶5    Concerned for the safety of the other persons, Poser and Lewellen accompanied Johnston to a vehicle stuck in the snow about 200 yards further up the road.  As the

2

deputies arrived, two occupants, Mike Challans (Challans) and Jesse Meader (Meader), exited the vehicle. Seeing that there were only two people in the vehicle, Poser inquired about the whereabouts of the other people Johnston had referenced. Johnston replied that he was including the two deputies in the count of "four or five" people he had referenced but that, additionally, there was another vehicle further up the road which was also stuck. Johnston gave another iteration of his story by later telling the officers that there was one more person further up the road with the other vehicle. After 30-40 minutes of attempting to assess the matter, the deputies decided that, given the conditions, it was prudent to bring Challans, Meader, and Johnston back to the sheriff's station in Lewistown and make other arrangements to look for the additional person, rather than proceeding further up the mountain. Back at the station, Johnston informed Lewellen that the name of the person with the other vehicle was Steve Smith (Smith), and that he was indeed still on the mountain. As a result of this information, a search and rescue team was sent back up to Maiden Canyon to look for Smith, who was not located there.

¶6    As a result of Johnston's various statements to police, he was charged with obstructing a peace officer, a misdemeanor, in violation of § 45-7-302, MCA. On June 23, 2008, Johnston was convicted in Fergus County Justice Court. He appealed, and after a March 10, 2009 jury trial, Johnston was again found guilty. He was sentenced to six month in the Fergus County Jail, with all but ten days suspended, and was ordered to pay a $500 fine and $75 in surcharges. Johnston appeals.

**STANDARD OF REVIEW**

¶7 We review jury instructions for abuse of discretion to determine whether the jury instructions, as a whole, fully and fairly instructed the jury on the law applicable to the particular case. *State v. Hall*, 2003 MT 253, ¶ 24, 317 Mont. 356, 77 P.3d 239. Ineffective assistance of counsel claims are mixed questions of law and fact which we review de novo. *State v. Kougl*, 2004 MT 243, ¶ 12, 323 Mont. 6, 97 P.3d 1095.

**DISCUSSION**

¶8 ***Did Johnston's trial counsel render ineffective assistance by failing to object to the jury instruction defining the mens rea element of the offense of obstructing a peace officer?***

¶9 Under § 45-7-302(1), MCA (2007), the offense of obstructing a peace officer as charged in this case is committed by a person who "knowingly obstructs, impairs or hinders . . . the performance of a governmental function . . . ." Under § 45-2-101(35), MCA, "knowingly" is defined as follows:

> a person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when the person is aware of the person's own conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when the person is aware that it is highly probable that the result will be caused by the person's conduct . . . .

As we have explained, "[w]hen a criminal offense requires that a defendant act 'knowingly,' the District Court must instruct the jury on what the term 'knowingly' means in the context of the particular crime." *State v. Azure*, 2005 MT 328, ¶ 20, 329 Mont. 536, 125 P.3d 1116.

4

¶10   The District Court instructed the jury that "[a] person acts knowingly when the person is aware of his or her conduct," which Johnston asserts was error. Johnston argues that the obstruction statute "seeks to avoid the singular *result* of obstruction of a peace officer, not any particular *conduct*" (emphasis added) and, accordingly, the proper definition of "knowingly" under § 45-2-101(35), MCA, for this crime is awareness that it is highly probable that his conduct will obstruct, impair or hinder the officers' performance of their governmental function. Johnston argues that we acknowledged this principle in *City of Kalispell v. Cameron*, 2002 MT 78, 309 Mont. 248, 46 P.3d 46.

¶11   The State acknowledges that it had to "prove Johnston was aware that his conduct would hinder the execution of the deputies' duties," but nonetheless argues that the mental state element must still go to conduct because the result of the conduct—obstruction—has "little to do with what the defendant is thinking." It reasons that Johnston is attempting to add an additional causality requirement into the statute that does not exist.

¶12   Though not directly addressing this issue in *Cameron*, we did state for purposes of reviewing a denial of the defendant's motion for directed verdict that the obstruction statute "require[s] that an individual obstructing a peace officer must engage in conduct under the circumstances that make him or her aware that it is highly probable that such conduct will impede the performance of a peace officer's lawful duty. In other words, the City had to prove that Cameron was aware that his conduct would hinder the execution of the Officers' duties." *Cameron*, ¶ 11.

5

¶13 Here, the prosecutor's closing argument emphasized that Johnston had to simply be aware of his conduct in order to satisfy the mens rea element of the offense:

> You will also note that the instruction requires a person to act knowingly, and there is an instruction on knowingly also. And, if you have a question about what it means to act knowingly, go ahead and dig it out. But essentially, knowingly is just a very short instruction. It says a person acts knowingly when they are aware of their conduct. And really all that means is that the criminal law, the law is to impose criminal responsibility not for people who are not knowing what they are doing, perhaps in a psychotic state, something they have done accidentally, things like that. Well there is certainly no doubt that Mr. Johnston was acting knowingly. You know he was able to recall here for you today that he wasn't being straight forward and honest with the officers. It is really not an issue, but I guess the definition of the crime includes that element if you will, the fact that a person acts knowingly.

The prosecutor added "[Johnston] admitted it I think when he told you that he was not being honest and straight forward with the officers. He admitted commission of the offense."

¶14 Although the State acknowledges that it had to prove Johnston was aware that his conduct could hinder the officers' execution of their duties, its argument in favor of the instruction given here negates that requirement. Rather than Johnston attempting to add a causal element to the offense, it is the State which seeks to subtract an element. If we were to approve the instruction and the prosecutor's argument, an obstruction charge could be established by merely proving that a person gave a dishonest answer in response to an officer's question. As we noted in *Cameron*, the statute clearly requires more, and the instruction was therefore erroneous.

6

¶15 Johnston acknowledges that his trial counsel did not object to the instruction during trial and thus asks that we take up the issue under plain error review or pursuant to his claim that trial counsel rendered ineffective assistance. The right to effective assistance of "counsel in criminal prosecutions is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article II, Section 24 of the Montana Constitution." *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861. When confronted with an ineffective assistance of counsel claim we apply the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984); *Whitlow*, ¶ 10. Under this test, the defendant must demonstrate (1) that counsel's representation was deficient and (2) that counsel's deficiency was prejudicial by establishing that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Kougl*, ¶ 11.

¶16 In *Kougl*, we considered the defendant's counsel's failure to seek instructions to view the testimony of the defendant's accomplices with distrust and to require that such testimony be corroborated. *Kougl*, ¶¶ 20-21. We concluded that we could review this ineffectiveness claim on direct appeal because there was no plausible justification for failure to seek the instructions. *Kougl*, ¶ 21. We reasoned that trial counsel "had nothing to lose" by seeking the instructions and had "failed to use the law to strike at the heart of the State's case." *Kougl*, ¶ 20. We reach the same conclusion here. Trial counsel had nothing to lose in seeking a correct instruction, and the failure to do so allowed the prosecutor to argue that Johnston had essentially confessed to the crime by his

7

testimonial admission that he had been dishonest with the officers, thus reducing the State's burden in proving the crime. Counsel's representation was deficient and prejudiced Johnston's case "such that there is a reasonable probability [the jury] would have arrived at a different outcome." *Kougl*, ¶ 26. The error thus requires reversal.

¶17 Reversed and remanded for a new trial in accordance with this opinion.


/S/ JIM RICE


We concur:


/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS