FILED

01/19/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0685

DA 18-0685

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 10N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

MARK WILLIAM COLLINS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Third Judicial District,
In and For the County of Powell, Cause No. DC-2017-65
Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Kathryn Hutchison, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

          Kathryn McEnery, Powell County Attorney, Deer Lodge, Montana

Submitted on Briefs:  December 2, 2020

Decided:  January 19, 2021

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Mark William Collins appeals four of his five convictions in the Third Judicial District Court for Criminal Endangerment, two counts of Attempted Assault with a Weapon, and Attempted Aggravated Assault. He alleges the District Court improperly instructed the jury on the mental states of the crimes charged, thereby reducing the State's burden to prove each element beyond a reasonable doubt and violating his right to due process. Collins did not object to the jury instructions and thus alleges plain error and ineffective assistance of counsel. We affirm.

¶3 At approximately 4:30 a.m. on August 4, 2017, Kevin Morley was driving westbound on Interstate 90 (I-90), just west of Deer Lodge. Morley observed a brown van, driven by Collins, driving eastbound in the westbound lanes; it was half in the right lane and half on the shoulder. Morley flashed his headlights and steered away to avoid the van; he saw a car and a semi-truck also move to the left lane to avoid Collins's vehicle. After briefly stopping at a convenience store, Morley reentered westbound I-90. He again saw Collins's vehicle, now driving west on the eastbound side of I-90. Morley became concerned and called 911.

2

¶4     Shortly after exiting onto North Frontage Road, Morley saw Collins's van again. The van left the highway and entered a ditch, breaking through a right-of-way fence and onto North Frontage Road toward Morley. The van accelerated toward him, leaving skid marks, and Morely steered his vehicle off the road to avoid a collision. The van came "within inches" of Morley's vehicle. Morley testified that he believed the van tried to run him off the road and he would have been "seriously injured if not possibly killed" had he not taken evasive action. Morley again called 911.

¶5     At approximately 5:30 a.m., dispatch relayed Morley's report to Deputy Austin Micu. Deputy Micu eventually identified a van of similar description parked with its headlights off at the Beck Hill Interchange on North Frontage Road. While approaching the van, Deputy Micu saw its headlights come on, and the van accelerated toward Deputy Micu's vehicle. Deputy Micu drove off the road to avoid a collision. He activated his emergency lights and siren and pursued the van. When Deputy Micu's vehicle got close, the van slowed down and began accelerating in reverse. Deputy Micu then put his vehicle in reverse and backed up about 300 yards, believing Collins again was trying to hit him. While Collins continued moving in reverse, Deputy Micu stopped, exited his vehicle, and ran toward the corner of the right-of-way fence for safety.

¶6     While Collins still was moving in reverse, another vehicle, driven by Rick Hathaway, entered North Frontage Road. Collins then placed his vehicle in drive and accelerated toward Hathaway. Deputy Micu returned to his vehicle and pursued the van. Hathaway did not believe he could safely pull over to the side of the road without the van

3

hitting his vehicle; he testified that the van was large and that "it would've been a forceful collision and . . . could've injured [him] a lot." He therefore chose to accelerate south, away from the approaching van. Hathaway reached about sixty to seventy miles per hour and then turned onto Rock Creek Cattle Company Road; he took the turn "as quickly as [he] could just hoping that the element of surprise would make that van go past." Collins sped through the intersection, stopping shortly after. Deputy Micu stopped his vehicle about fifty feet behind Collins's van. Collins again reversed toward Deputy Micu's vehicle, this time hitting it and causing it to spin sideways into the grass. Deputy Micu estimated Collins was driving about thirty-five miles per hour when the van hit his vehicle. He testified that he felt pain in his neck after the impact.

¶7     After this collision, Collins continued to pursue Hathaway on Rock Creek Cattle Company Road. Hathaway testified that, at this point, it was "100 percent obvious [Collins was] out to hurt somebody with that van." Deputy Micu followed, pursuing Collins's van at speeds up to ninety miles per hour. Fearing for the safety of the nearby patrons and workers at Rock Creek Cattle Company, Hathaway turned onto a back road at Garrison, again at high speeds to throw off the van. Collins missed this turn and spun around at the intersection. Deputy Micu stopped his vehicle on the other side of the intersection, facing Collins's van.

¶8     Because of Collins's actions to this point, Deputy Micu "wholeheartedly believed that this individual [he] was chasing was out to hurt somebody or kill someone and that it was [his] job to intercede." Deputy Micu exited his vehicle with an AR-15 rifle and took

4

a defensive position behind the door of his patrol car. Collins rapidly accelerated the van directly towards Deputy Micu's vehicle. Deputy Micu believed that if the van struck him or his car, he would be seriously injured or killed, and it would leave his vehicle "inoperable to the point where [he] no longer stood between [Collins] and the public." When the van was about fifty or sixty yards away and still heading directly toward Deputy Micu's vehicle, Deputy Micu fired the rifle eleven times; nine shots passed through the van's windshield, and four struck Collins's face and shoulders. The van decelerated and came to a stop about thirty yards behind Deputy Micu's vehicle, missing it by a matter of inches. Another officer arrived and helped Deputy Micu administer aid to Collins until an ambulance arrived. Collins was conscious and did not resist arrest or treatment. Lab tests later showed he had methamphetamine and amphetamine in his system. The officers found no weapons in the vehicle or on Collins's person. When interviewed by Department of Criminal Investigation Agent Mark Hilyard, Collins had trouble remembering the events.

¶9 The State charged Collins by Information in Powell County with: Count I, Criminal Endangerment, a felony in violation of § 45-5-207, MCA, for driving the wrong direction on I-90 and almost colliding with or causing danger to Morely and other drivers; Count II, Attempted Assault with a Weapon, a felony in violation of §§ 45-5-213, 45-4-103, MCA, for driving his van at Morely's vehicle on the frontage road; Count III, Assault with a Weapon, a felony in violation of § 45-5-213, MCA, for hitting Deputy Micu's vehicle on the frontage road; Count IV, Attempted Assault with a Weapon, a felony in violation of § 45-5-213, MCA, for driving his van at Hathaway's vehicle on the frontage road; and

5

Count V, Attempted Deliberate Homicide, a felony in violation of §§ 45-5-102(2), 45-4-103, MCA, for accelerating the van directly toward Deputy Micu on Rock Creek Cattle Company Road.

¶10 The District Court held a four-day trial before a Powell County jury. Both parties offered evidence regarding Collins's mental state during the events of August 4. The theory of Collins's defense was that he did not intend to cause serious injury and that Deputy Micu exaggerated the danger.

¶11 During settlement of jury instructions, the parties and court agreed on fifty-four instructions, which included the lesser-included offense instructions Collins offered. Collins's defense counsel made no objections. The jury convicted Collins of Counts I through IV. It acquitted him of Attempted Deliberate Homicide, but it found him guilty of the lesser-included offense of Attempted Aggravated Assault. The District Court sentenced Collins to ninety years in the Montana State Prison, with forty-five years suspended and credit for time served.

¶12 We review jury instructions to determine whether, "as a whole, [they] fully and fairly instruct the jury on the law applicable to the case." *State v. Hall*, 2003 MT 253, ¶ 24, 317 Mont. 356, 77 P.3d 239 (citation omitted). We review a district court's decisions regarding jury instructions for an abuse of discretion and will reverse only if the jury instructions prejudicially affected the defendant's substantial rights. *State v. Gerstner*, 2009 MT 303, ¶ 15, 353 Mont. 86, 219 P.3d 866 (citation omitted); § 46-20-701(1), MCA.

6

¶13     When an issue involving fundamental rights is raised for the first time on appeal, we retain discretion to apply plain error review. *State v. Trujillo*, 2020 MT 128, ¶ 6, 400 Mont. 124, 464 P.3d 72 (citations omitted). Ineffective assistance of counsel claims are mixed questions of law and fact that we review de novo. *State v. Kougl*, 2004 MT 243, ¶ 12, 323 Mont. 6, 97 P.3d 1095 (citations omitted).

¶14     Collins argues that the District Court plainly erred by instructing the jury: (1) with a conduct-based, rather than results-based, definition of "knowingly" for the offense of Criminal Endangerment; and (2) on the mental states for the underlying crimes in each Attempt offense, rather than on the specific intent mental state required for Attempt. Alternatively, Collins contends that he received ineffective assistance when defense counsel suggested and failed to object to the allegedly erroneous instructions.

¶15     Trial courts have broad discretion when instructing the jury. *State v. Patton*, 280 Mont. 278, 286, 930 P.2d 635, 639 (1996) (citation omitted). Because the due process clauses of the United States and Montana Constitutions impose upon the State a duty to prove beyond a reasonable doubt every element of a crime charged, instructions that relieve the State of this burden violate a defendant's due process rights. *Carella v. California*, 491 U.S. 263, 265, 109 S. Ct. 2419, 2420 (1989) (citations omitted); *State v. Clark*, 1998 MT 221, ¶ 29, 290 Mont. 479, 964 P.2d 766; *see* § 26-1-403(2), MCA (requiring the jury be adequately instructed of this standard and burden). We generally decline to review jury instructions if the defendant failed to object at the time they were proposed; we review

such claims only if we find plain error. *State v. Earl*, 2003 MT 158, ¶¶ 23-25, 316 Mont. 263, 71 P.3d 1201 (citations omitted).

¶16    This Court may apply the plain error doctrine in narrow circumstances when we are "firmly convinced" that "failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *State v. Taylor*, 2010 MT 94, ¶¶ 14, 17, 356 Mont. 167, 231 P.3d 79 (citation omitted).

¶17    Collins first challenges the mental state instruction for Count I, Criminal Endangerment. A person commits the offense of Criminal Endangerment if he "knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another." Section 45-5-207(1), MCA. A district court must instruct the jury on the correct definition of "knowingly" in the context of the particular crime. *State v. Azure*, 2005 MT 328, ¶ 20, 329 Mont. 536, 125 P.3d 1116. Section 45-2-101(35), MCA, defines "knowingly" as either conduct-based or results-based. We have made clear that the offense of criminal endangerment "emphasizes result over conduct"; it thus requires a results-based instruction for its mental state of "knowingly." *State v. Lambert*, 280 Mont. 231, 236-37, 929 P.2d 846, 849-50 (1996) ("It is the appreciation of the probable risks to others posed by one's conduct that creates culpability for criminal endangerment.").

¶18    Instead of the proper results-based definition, Instruction 23 stated, "[a] person acts knowingly with regard to the offense of Criminal Endangerment when the person is aware

of his conduct." Collins contends that the District Court violated his right to due process when it used this conduct-based definition of "knowingly." He argues that this is plain error and leaves unsettled the question of the fundamental fairness of the trial because it lowered the State's burden to prove every element of the offense. The State concedes the instructional error but contends that it is not reversible because no miscarriage of justice occurred, and the integrity of the judicial process was not compromised because the jury instruction did not affect Collins's substantial rights. The State argues that the totality of the facts, including evidence of the obvious evasive maneuvers other cars took to avoid him, overwhelmingly showed that Collins was aware of the risks he created.

¶19    Because the results-based offense of criminal endangerment demands a results-based instruction for the "knowingly" mental state, the conduct-based instruction here is patently erroneous and thus warrants plain error review. *Lambert*, 280 Mont. at 236-37, 929 P.2d at 849-50. That, however, is not the end of the inquiry. Collins did not object to the instruction and thus bears the burden on appeal of demonstrating that the error calls into question the fundamental fairness of his conviction. *State v. Favel*, 2015 MT 336, ¶¶ 23, 27, 381 Mont. 472, 362 P.3d 1126 (citations omitted). Collins argues that the fundamental fairness is called into question here because Morely's testimony does not support the conclusion that Collins was aware his conduct caused a substantial risk of serious bodily injury to another. He contends that the jury reasonably could have concluded Collins did not recognize this risk based on two plausible theories: (1) a person might conclude there is less risk of hitting someone in the early morning hours because

9

there are fewer cars on the road at that time; and (2) a person might conclude there is less risk of hitting someone on the shoulder of the road.

¶20 We are not persuaded. The overwhelming evidence of Collins's actions left no room for any conclusion but that Collins was aware his conduct created a risk of serious bodily injury or death to other motorists: Collins twice deliberately drove on the wrong side of the interstate, moving at high speeds; he aimed his vehicle directly at Morely's vehicle, even after Morely flashed his headlights at Collins; and both Morely and other drivers had to take obvious evasive maneuvers to avoid him. Considering all the facts, we are not convinced that the early hour of the events could have affected the jury's conclusion under a results-based instruction. That the events occurred early in the morning also showed the increased danger while driving in the dark. And Morely saw Collins not just once, but again, driving the wrong way on the freeway. We similarly are unconvinced that the jury reasonably could have found Collins's driving partially on the shoulder of the road to have lessened his awareness of the danger to other drivers. We thus conclude that Morely has failed to demonstrate the instructional error may have led to a manifest miscarriage of justice amounting to plain, reversible error.

¶21 Collins next challenges the jury instructions for Counts II, IV, and V, which all charged Attempt offenses. Section 45-4-103, MCA, defines the crime of Attempt: "A person commits the offense of attempt when, *with the purpose to commit a specific offense*, the person does any act toward the commission of the offense." (Emphasis added). Collins contends that, as a whole, the jury instructions relating to the

Attempt offenses improperly referenced the mental states for the underlying offenses instead of the purpose to commit the specific underlying crime charged. He argues that the instructions allowed the jury to convict him of the Attempt crimes if it found he simply acted "knowingly." This, he maintains, lowered the State's burden to prove every element of the charged offenses and violated his due process rights.

¶22 Collins focuses his challenge on Instructions 36 and 46. Those instructions said: "[a] person who knowingly does any act toward the commission of assault with a weapon commits the offense of attempted assault with a weapon." He posits that the instruction allowed the jury to convict him on a sole finding that he "knowingly" committed "any act" toward each underlying offense, which is legally insufficient to convict him of Attempt. Considering the effect of all the instructions together, however, we conclude that they fully and fairly advised the jury of the specific intent element of Attempt. *Patton*, 280 Mont. at 286, 930 P.2d at 639. Instruction 37 clearly defined the offense of Attempt for Counts II, IV, and V with the required specific intent element: "with the purpose to commit a specific offense." Instructions 34 and 35 also defined Attempted Assault with a Weapon—the offense charged in Counts II and IV—to include its specific intent element: "with the purpose to commit the offense of Assault with a Weapon."

¶23 Considering Instructions 34, 35, and 37 together with Instruction 31 (correctly defining "purposely" as the "conscious object to cause such a result") and Instructions 32, 47, 50, and 53 (instructing the jury that it must find "all of these elements" to convict), the instructions fully and fairly advised the jury that it must find the purpose to

11

commit a specific offense and that the State had to prove each element beyond a reasonable doubt.

¶24   Collins additionally argues that Instruction 21 was misleading and similarly lowered the State's burden. This instruction stated:

> If purposely or knowingly causing death or serious bodily injury was not within the contemplation or purpose of the Defendant, either element can nevertheless be established if the result involves the same kind of harm or injury as contemplated but the precise harm or injury was different or occurred in a different way, unless the actual result is too remote or accidental to have a bearing on the Defendant's liability or on the gravity of the offense.

Collins contends this instruction allowed the jurors to find that a general purpose to cause harm or injury was sufficient for the offenses instructed as Attempt, instead of the specific intent to commit the underlying crime. Collins relies on *State v. St. Marks*, 2020 MT 170, ¶ 19, 400 Mont. 334, 467 P.3d 550, in which we noted that the instruction did not apply to the charge of attempted deliberate homicide. Unlike *St. Marks*, where we declined plain error review because the defendant did not contest causation, Collins maintains that his jury could have agreed that Deputy Micu's perception of the danger was exaggerated and that Collins had not intended to cause serious injury, as evidenced by only minor damage to either Deputy Micu's or Collins's vehicles. Collins has not met the high burden for plain error review. His prejudice argument focuses on the Attempted Deliberate Homicide evidence. But Collins was acquitted of that charge. He has offered no other showing of how the challenged instruction undermined the fundamental fairness of the trial in the context of the many other instructions the trial court gave. Taken as a whole, the jury instructions for the Attempt charges do not entitle Collins to a new trial for plain error.

12

¶25 Collins alternatively contends his convictions should be reversed for ineffective assistance of counsel. A defendant claiming ineffective assistance of counsel must demonstrate both: "(1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defense." *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861 (citations omitted). To establish the prejudice prong, the appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Morgan*, 2003 MT 193, ¶ 9, 316 Mont. 509, 74 P.3d 1047 (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984)). The probability must be high enough to undermine confidence in the outcome. *Morgan*, ¶ 9 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

¶26 We may resolve this issue on the *Strickland* prejudice analysis. The totality of the trial record shows: Collins deliberately drove on the wrong side of the road and chased after several other drivers at high speeds; Collins nearly collided with at least five cars; other drivers had to make evasive maneuvers to avoid collision with Collins; and Morely, Hathaway, and Deputy Micu testified to experiencing reasonable apprehension of serious bodily injury as a result of Collins's conduct. Considering the overwhelming trial evidence, Collins has not demonstrated a reasonable probability of a different outcome had other instructions been given. *Whitlow*, ¶ 10 (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). Collins's ineffective assistance of counsel claims thus fail.

13

¶27     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. The legal issues Collins presents are controlled by settled precedent. Though the trial court gave an erroneous instruction for Criminal Endangerment, Collins has not established that the instruction calls the fundamental fairness of his trial into question. The Attempt instructions, taken as a whole, fully and fairly instructed the jury on the law applicable to the charged offenses, and we thus decline plain error review. Finally, Collins failed to demonstrate prejudice under his claim for ineffective assistance of counsel. Collins's convictions therefore stand, and we accordingly affirm.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON

Justice Ingrid Gustafson, concurring.

¶28     This case involves a tragic situation where Collins, suffering from mental health problems with suicidal motivations, engaged in criminal conduct in pursuit of ending his own life. While I do not excuse the means by which Collins sought to commit suicide and agree with the majority opinion in all regards, I am compelled to note that it appears Collins should more appropriately seek sentence review than conviction appeal. Through the

14

sentence review process, Collins's considerable mental health issues and their impact on his conduct and amenability to treatment can be better addressed.

/S/ INGRID GUSTAFSON