FILED

02/28/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0220

DA 20-0220

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 34N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

PAUL RUSSELL SMITH,

Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDC 2017-453
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, Kathryn Hutchison, Assistant Appellate Defender, Helena, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Roy Brown, Assistant Attorney General, Helena, Montana

Kevin Downs, Lewis & Clark County Attorney, Stephanie Robles, Katie Jerstad, Deputy County Attorneys, Helena, Montana

Submitted on Briefs: January 11, 2023

Decided: February 28, 2023

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    A jury in the First Judicial District Court, Lewis and Clark County, convicted Paul Russell Smith of eight offenses related to acts committed against his daughter D.S. and her friend and neighbor C.J. Smith appeals only his convictions on Count I, Solicitation of Sexual Intercourse Without Consent, and Count VIII, Sexual Abuse of Children, arguing that the District Court provided the jury with improper instructions. We reverse Smith's conviction on Count VIII because the jury should have been instructed on sexual abuse of children using a conduct-based definition of "knowingly," and the error prejudiced Smith's substantial rights. We affirm Smith's conviction on Count I because the instructions as a whole fully and fairly instructed the jury on the requisite mental state for solicitation. We remand for correction of a scrivener's error in the Judgment on Count III.

¶3    Smith lived in a mobile home park with his children, including his eldest daughter D.S. C.J.'s family moved into the same neighborhood when C.J. was in elementary school. Smith quickly became close friends with C.J.'s parents. As a result, C.J. and C.J.2[1] often spent time at the Smiths' home. At first, both C.J. and C.J.2 considered Smith to be "nice."

---

[1] C.J.'s younger sister has the same initials; we refer to the younger sister as C.J.2.

But Smith started to get more and more "touchy" with the girls as D.S. and C.J. entered middle school.

¶4 D.S., C.J., and C.J.2 all testified at trial, but their testimony differed on certain particulars in their recounting of events. All three provided corroborating testimony that Smith would take D.S., C.J., and C.J.2 to the store at midnight after the other children had gone to bed to buy the girls treats, like candy or pop. When C.J. was in the vehicle, Smith would make her sit right next to him. Smith would tickle C.J., once to the point that she lost control of her bladder. Smith also provided D.S. and C.J. with alcohol.

¶5 Specific to her interactions with Smith, C.J. testified that Smith told her he loved her, wanted to have sex with her, and planned to marry her when she turned eighteen. C.J. had witnessed Smith and D.S. engaging in oral sex and watching pornography together in Smith's bedroom. C.J. also testified that Smith threatened to harm her family if she told anyone about the sexual nature of his relationship with D.S. On another occasion, Smith brandished a "hunting knife" in front of C.J. and threatened to cut her until she touched him sexually. C.J. further recalled Smith forcing her to undress while he held a knife to C.J.2's throat. Smith then took nude pictures of C.J., threatening to cut C.J.2's throat if C.J. did not comply. C.J. told the jury that her younger sister did not remember this incident because Smith cut her throat a little and she was "drowsy." C.J. explained that Smith claimed the cut on C.J.2's throat was from a cat scratch.

¶6 D.S. testified that her relationship with her father began as "normal," but he soon started to see her as "one of his girlfriends." D.S. testified that after she became aware that C.J. was having sex with her father, both C.J. and Smith asked D.S. to "join." D.S. did not

3

want to be involved, but Smith and C.J. forcefully removed D.S.'s clothing and Smith forced D.S. to engage in sexual conduct with him. D.S. described multiple other instances when Smith forced her into sexual conduct, reporting that C.J. was present on these occasions. D.S. testified that C.J. had access to Smith's cellphone and would take sexually explicit pictures of herself for Smith to see. D.S. or Smith would then delete the pictures. D.S. witnessed Smith asking C.J. to stop taking the pictures because he did not want to be "caught" with them on his cellphone.

¶7 The State charged Smith with eight offenses: Count I, Solicitation of Sexual Intercourse Without Consent; Count II, Sexual Intercourse Without Consent; Count III, Sexual Assault; Count IV, Assault With a Weapon; Count V, Intimidation; Count VI, Sexual Intercourse Without Consent; Count VII, Sexual Assault; and Count VIII, Sexual Abuse of Children.

¶8 Before trial, the State proposed a conduct-based jury instruction for the definition of "knowingly" on several of the charges, including the sexual abuse of children offense. It also proposed a result-based jury instruction for the other charges. During trial, however, the State requested that the District Court instruct just one definition for "knowingly" to "simplify [the instructions] for the jury" because the number of charges would require multiple instructions on the mental state elements. The State suggested that the result-based instruction be used for all the offenses. The court wrote a single jury instruction to define "knowingly" as result-based for seven of the charges and as conduct-based for the charge of solicitation of sexual intercourse without consent.

4

¶9 The jury found Smith guilty on all counts. Smith received a ninety-five-year sentence to the Montana State Prison. Smith appeals two convictions: Count I, Solicitation of Sexual Intercourse Without Consent; and Count VIII, Sexual Abuse of Children. The latter charge related to the pictures of C.J. on Smith's phone. The State charged Smith with Solicitation of Sexual Intercourse Without Consent for his attempts to "encourage" C.J. to have penetrative sex with him.

¶10 "We review jury instructions to determine whether the instructions, taken as a whole, fully and fairly instruct the jury as to the applicable law and whether the district court abused its discretion in instructing the jury." *State v. Gerstner*, 2009 MT 303, ¶ 15, 353 Mont. 86, 219 P.3d 866 (citation omitted). Even if a district court instructs the jury incorrectly, the error must prejudice the defendant's substantial rights to warrant reversal. *Gerstner*, ¶ 15.

¶11 Smith argues for both convictions he appeals that the court gave the jury improper instructions on the mental state of "knowingly."[2] The District Court provided the jury with the following instruction:

INSTRUCTION NO. 35

As to Count I—Solicitation of Sexual Intercourse Without Consent, a person acts knowingly when the person is aware of his or her conduct.

As to Counts II through VIII, a person acts knowingly when the person is aware there exists the high probability that the person's conduct will cause a specific result.

[2] The State argues that Smith failed to preserve any objection to the jury instructions by failing to object at trial on proper grounds. We agree generally with Smith, however, that he preserved his claim for appeal when his trial counsel objected to the "knowingly" instruction and argued that the court needed to be "count specific" when defining the mental state for each offense.

*Sexual Abuse of Children Instruction*

¶12　Count VIII charged Smith with Sexual Abuse of Children under § 45-5-625(1)(a), MCA. This subsection criminalizes a person's knowing employment or use, or permittance of employment or use, of a child in an exhibition of sexual conduct. The State charged Smith with this offense because of pictures that investigators recovered from Smith's cellphone. At trial, Smith denied taking any pictures of C.J. on his cellphone. He testified that he gave thumbprint access to C.J. and D.S. but denied giving them the password to his cellphone. Because she had access, C.J. would "take videos and pictures of herself," but Smith denied ever finding nude pictures of C.J. on his cellphone.

¶13　Smith argues that Instruction No. 35 was incorrect because subsection (1)(a) of the Sexual Abuse of Children statute criminalizes the conduct of a person, not a specific result. He maintains that the court lowered the State's burden of proof by requiring it to prove a result-based mental state rather than a conduct-based mental state.

¶14　The State counters that a result-based instruction was appropriate for § 45-5-625(1)(a), MCA, because the subsection criminalizes "the ultimate *result* of the exhibition of a child in sexual conduct." The State argues that "[w]ithout the result of an exhibition of a child in sexual conduct, no offense is committed under Subsection 1(a)."

¶15　When an offense requires that a defendant act with the mental state of "knowingly," the trial court "must instruct the jury on what the term 'knowingly' means in the context of the particular crime." *State v. Deveraux*, 2022 MT 130, ¶ 30, 409 Mont. 177, 512 P.3d 1198 (citing *State v. Azure*, 2005 MT 328, ¶ 20, 329 Mont. 536, 125 P.3d 1116).

6

When an offense criminalizes a person's conduct, "a person acts knowingly . . . when the person is aware of the person's own conduct[.]" Section 45-2-101(35), MCA. When an offense criminalizes a particular result, "a person acts knowingly . . . when the person is aware that it is highly probable that the result will be caused by the person's conduct." Section 45-2-101(35), MCA.

¶16    "Whether an offense is a conduct-based or a result-based offense is determined by an analysis of its elements." *Deveraux*, ¶ 31. A result-based offense does not criminalize any "particularized conduct"; rather, it criminalizes a specific result. *Deveraux*, ¶ 31 (citations omitted). A conduct-based offense differs in that a specific "result" need not occur for a person to be held culpable; instead, the statute will criminalize a person's particular conduct. *See Deveraux*, ¶ 31.

¶17    We have held that sexual abuse of children under § 45-5-625(1)(e), MCA, is "an offense of 'conduct' rather than a 'result-of-conduct' offense." *State v. Hovey*, 2011 MT 3, ¶ 20, 359 Mont. 100, 248 P.3d 303. In *Hovey*, this Court considered § 45-5-625(1)(e), MCA, criminalizing the knowing possession of visual or print mediums depicting a child engaged in actual or simulated sexual conduct. We concluded that this offense criminalized particular conduct. *Hovey*, ¶ 20. The State argues that subsection (1)(e) clearly criminalizes a person's conduct—knowing possession—but that subsection (1)(a) differs from subsection (1)(e) because the former includes the "result" of a child being used as an exhibition of sexual conduct. We disagree.

¶18    Subsection (1)(a) criminalizes particular conduct: employing, using, or permitting the employment or use of a child in an exhibition of actual or simulated sexual conduct.

This differs from a result-based crime, such as aggravated assault or criminal endangerment. *See State v. Ilk*, 2018 MT 186, ¶ 19, 392 Mont. 201, 422 P.3d 1219 (citing § 45-5-202(1), MCA ("an element of Aggravated Assault is that a person 'causes serious bodily injury to another,' which is a result")); *State v. Lambert*, 280 Mont. 231, 234, 929 P.2d 846, 848 (1996) (citing § 45-5-207(1), MCA (a person commits criminal endangerment if the person "knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another.")). A person could engage "in a wide variety of conduct" to commit criminal endangerment, "provided that the conduct" leads to the result—"a substantial risk of death or serious bodily harm." *Lambert*, 280 Mont. at 236, 929 P.2d at 849.

¶19 Subsection (1)(a) is similar in structure to the conduct-based subsection (1)(e). The "knowing use" of subsection (1)(a) correlates to the "knowing possession" that we have held to be particularized criminal conduct in (1)(e). We did not hold that the depiction of a child engaged in sexual conduct turned an offense under subsection (1)(e) into a result-based crime. Similarly, under subsection (1)(a), causing a child to exhibit sexual conduct is not an element of the offense; rather, the language criminalizes the defendant's conduct of employment or use of a child in such exhibition. The District Court should have instructed the jury on the conduct-based definition of knowingly.

¶20 We will not overturn a conviction because the court improperly instructed the jury unless the court's error prejudiced the defendant's substantial rights. *Gerstner*, ¶ 15. Jury instructions that relieve the State of its burden to prove each element of an offense violate a defendant's right to due process. *State v. Miller*, 2008 MT 106, ¶ 11, 342 Mont. 355,

181 P.3d 625 (citations omitted). It is the State's burden to prove each element of an offense beyond a reasonable doubt. *State v. Clark*, 1998 MT 221, ¶ 29, 290 Mont. 479, 964 P.2d 766. As part of this burden, the State must prove that a person acted under the requisite mental state to be culpable for the offense. *See* § 45-2-103, MCA. Smith argues that the result-based instruction lowered the State's burden of proving the requisite mental state of "knowingly."

¶21 Under the facts of this case, we agree. The State was required to prove that Smith was aware that he used C.J. in an exhibition of sexual conduct when he had her pictures on his cellphone. Under the instruction given, the State could convict Smith by proving only that he was aware that allowing C.J. to use his phone was likely to result in sexually explicit pictures of her being on his phone. The given instruction eliminated the State's need to prove that Smith himself "used" C.J. in an exhibition of sexual conduct. The theory of Smith's defense was that C.J. must have taken the pictures herself because Smith did not know how else the pictures would be on his cellphone. The result-based instruction, therefore, relieved the State from its burden to prove that Smith was aware of his own use of C.J. in an exhibition of sexual conduct, a required element of the charged offense. We reverse Smith's conviction for Count VIII, Sexual Abuse of Children.

*Solicitation Instructions*

¶22 Smith argues that Instruction No. 35 also improperly defined a lower culpability than was required to convict him of the crime of solicitation of sexual intercourse without consent. Smith contends that the court should have instructed the jury to find that Smith acted with "purpose," but that Instruction No. 35 informed the jury that it needed to find

9

Smith acted only knowingly when soliciting C.J. Smith maintains that Instruction No. 35 relieved the State of its burden to prove each essential element of Count I, Solicitation of Sexual Intercourse Without Consent. Smith also argues that the State "relied heavily on [this] incorrect instruction" in its closing argument, "further necessitating reversal."

¶23 The State counters that the court gave the jury the proper mental state instruction for solicitation. It acknowledges that Instruction No. 35 was incorrect when it provided a definition of "knowingly" for Count I. The State points out, however, that the specific instruction the jury received for solicitation did not contain the word "knowingly"; it included the correct mental state of "purposely." The State adds further that the jury was unlikely to rely on the prosecutor's incorrect oral instructions because the court conveyed the correct mental state for solicitation in its final jury instructions.

¶24 When reviewing jury instructions, we assess whether the court "fully and fairly" instructed the jury on applicable law. *State v. Archambault*, 2007 MT 26, ¶ 14, 336 Mont. 6, 152 P.3d 698. We presume that a jury follows the instructions and laws provided by the court. *State v. Sanchez*, 2008 MT 27, ¶ 57, 341 Mont. 240, 177 P.3d 444 (citing *State v. Turner*, 262 Mont. 39, 55, 864 P.2d 235, 245 (1993)).

¶25 To convict a person of the crime of solicitation, a jury must find that "with the purpose that an offense be committed, the person commands, encourages, or facilitates the commission of that offense." Section 45-4-101, MCA. The court's instructions first defined solicitation of sexual intercourse without consent:

INSTRUCTION NO. 9

A person commits the offense of solicitation when, with the purpose that the offense of sexual intercourse without consent be committed, the person encourages another to commit the crime of sexual intercourse without consent.

It makes no difference whether the crime of sexual intercourse without consent was actually committed.

The court then instructed the jury on the elements of the offense:

INSTRUCTION NO. 10

To convict the Defendant of the offense of SOLICITATION, the State must prove the following elements:

1. That the Defendant encouraged [C.J.] to commit sexual intercourse without consent;

   AND

2. That the Defendant did so with the purpose that the crime of sexual intercourse without consent be committed whether or not it was actually committed.

If you find from your consideration of the evidence that all of these elements have been proved beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of the evidence that any of these elements has not been proved beyond a reasonable doubt then you should find the Defendant not guilty.

The court also provided the definition of the mental state "purposely":

INSTRUCTION NO. 36

A person acts purposely when it is the person's conscious object to cause that result.

Equivalent terms, such as "purpose" and "with the purpose," have the same meaning.

11

¶26 Smith argues that because the court also included that, "[a]s to Count I—Solicitation of Sexual Intercourse Without Consent a person acts knowingly when the person is aware of his or her conduct," the court improperly instructed the jury that it could find that Smith acted "knowingly" rather than "purposely" when considering the offense of solicitation.

¶27 We look at jury instructions holistically to determine whether the jury was "fully and fairly" apprised of the law. *Archambault*, ¶ 14. When a party claims error in a jury instruction, we consider whether "as a part of the whole body of instructions, the instruction is prejudicial to the appealing party[.]" *State v. Stone*, 266 Mont. 345, 350, 880 P.2d 1296, 1299 (1994). "The general rule is that an instruction which states the law inaccurately or incompletely or even incorrectly in part may be cured by others which correct the error or render it innocuous." *State v. Bosch*, 125 Mont. 566, 574, 242 P.2d 477, 481 (1952) (citation omitted).

¶28 Considering all the instructions, the court did not tell the jury that it should convict Smith using the mental state of knowingly rather than purposely. It correctly identified the mental state for solicitation in both Instruction No. 9 and Instruction No. 10. It also provided a definition of "with the purpose" in Instruction No. 36. Nowhere did the word "knowingly" appear in the jury instructions defining the offense of solicitation and its elements. Though Instruction No. 35 improperly included a definition of knowingly as applied to solicitation of sexual intercourse without consent, the instructions particular to

the charge did not apply that term.[3]  *See Bosch*, 125 Mont. at 574, 242 P.2d at 481.  The jury was told to read the instructions as a whole.  When taken as a whole, the instructions made it clear that the jury was to consider whether Smith acted with "purpose" when considering the offense of solicitation.  The court did not relieve the State of its burden to prove that Smith purposely committed solicitation of sexual intercourse without consent, and the incorrect instruction did not prejudice Smith's substantial rights.  *See Gerstner*, ¶ 15.

¶29     Smith maintains, however, that the State improperly changed the instruction in its closing arguments.  The State told the jury the following:

> So for solicitation, you're going to want to consider these elements: Did the defendant encourage [C.J.] to commit sexual intercourse, and, two, did the defendant do so—sorry.  It should be "knowledge" there, not "purpose."
> So here's the first element of solicitation: Did the defendant encourage [C.J.] to have sex?

.   .   .

> Next in the solicitation analysis—I suppose before you find him guilty you need to decide mental state.  Knowingly, which is whether he was aware of his conduct.  Did he know what he was doing when he encouraged [C.J.] to have sex with him?"

¶30     Smith does not argue prosecutorial misconduct on appeal.  Nor did Smith object to the prosecutor's statements during closing argument at trial.  *See State v. Haithcox*, 2019 MT 201, ¶ 23, 397 Mont. 103, 447 P.3d 452 (citation omitted) (we generally will not address an issue of prosecutorial misconduct pertaining to a prosecutor's statements that a

---

[3] The confusion in the instruction appears to have arisen from the proper instructions on sexual intercourse without consent, charged in Count II and Count VI, that the jury must find "the Defendant acted knowingly."

defendant does not object to at trial).  Further, Smith did not explain in his objection to Instruction No. 35 that he objected to the solicitation charge specifically being included within the Instruction.  Rather, trial counsel appeared to take issue with the improper distinction made between result-based and conduct-based sex crimes.  Smith does not seek plain-error review of this unpreserved claim or argue that these statements compromised his right to a fair trial.  *See Haithcox*, ¶ 23 (citation omitted).  We presume that a jury will follow the law that the court provides.  *State v. Wienke*, 2022 MT 116, ¶ 32, 409 Mont. 52, 511 P.3d 990 (citation omitted).  We therefore presume that the jury followed the court's instructions on the elements of solicitation, notwithstanding the prosecutor's mistaken comments.  We affirm Smith's conviction for Count I, Solicitation of Sexual Intercourse Without Consent.

¶31     Smith finally claims that the court made an error on his written judgment, improperly stating that he was convicted on "Count III, Sexual Intercourse Without Consent."  The State concedes that the judgment should read: "Count III, Sexual Assault."  We remand for correction of the Judgment.

¶32     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  This appeal presents issues resolved by the application of settled authority.  We reverse Smith's conviction of Sexual Abuse of Children, Count VIII, affirm Smith's conviction of Solicitation of Sexual Intercourse Without Consent, Count I, and remand for the District Court to correct the Judgment to accurately reflect Sexual Assault, Count III.

14

/S/ BETH BAKER

We Concur:

/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE

Chief Justice Mike McGrath, dissenting.

¶33    I agree with the majority that the District Court should have instructed the jury on sexual abuse of children using a conduct-based definition of "knowingly." Opinion, ¶ 2. However, I dissent from the majority's holding that the court's error merits reversing Smith's conviction on Count VIII. Opinion, ¶ 2.

¶34    The results-based instruction *raises* the State's burden of proving the requisite mental state of "knowingly." *Contra* Opinion, ¶ 21. The conduct-based definition specifies that "a person acts knowingly . . . when the person is aware of the person's own conduct[.]" Section 45-2-101(35), MCA. The results-based definition specifies that "a person acts knowingly . . . when the person is aware that it is highly probable that the result will be caused by the person's conduct." Section 45-2-101(35), MCA. The plain text of the definitions makes clear that a conduct-based instruction requires only that the State prove beyond all reasonable doubt that the defendant was aware of their conduct, whereas the result-based instruction requires the State prove both that the defendant was aware of their conduct *and* that the defendant was aware of the highly probable results of that conduct. One cannot be aware of the likely results of their conduct without being aware of their conduct in the first place.

15

¶35 The majority errs by misstating the relative burden imposed on the State by the results-based instruction in comparison to the conduct-based instruction. Opinion, ¶ 21. According to the majority, the results-based definition "relieved the State from its burden to prove that Smith was aware of his own use of C.J. in an exhibition of sexual conduct[.]" Opinion, ¶ 21. Based on this supposed relief, the majority concluded that the court's error prejudiced Smith's substantial rights—meriting the overturning of his conviction on Count VIII. Opinion, ¶ 21.

¶36 The results-based definition provides no such relief. The results-based instruction required that the jury find that the State had met its burden with respect to Smith being aware of his conduct related to C.J. as well as of the highly probable results of that conduct. The improper instruction did not prejudice Smith's substantial rights given that the erroneous instruction raised the State's burden. *See State v. Gerstner,* 2009 MT 303, ¶ 15, 353 Mont. 86, 219 P.3d 866.

¶37 I would affirm Smith's convictions on Count I and Count VIII and remand for correction of a scrivener's error in the Judgment on Count III.

¶38 I respectfully dissent.

/S/ MIKE McGRATH